1818.

ROBERTS
v.
ANDERSON.

---

### ROBERTS and BOYD *against* B. and J. ANDERSON.

*June* 19.

A person who has fraudulently acquired title to land, and fraudulently conveyed it, though by a mere quit-claim deed without covenants, is not a competent witness for his grantee, in a suit brought against him by a person claiming it, as a *bona fide* purchaser.

A deposition taken in an ejectment, suit at law, brought by the defendants against a third person, as tenant, to recover the land, the subject of the suit here, is not admissible in evidence against the plaintiffs; it being *res inter alios acta.*

Under the *third* section of the act to prevent frauds, (10. sess. c. 44.—*27 Eliz.* ch. 4) which was intended to protect *bona fide* purchasers, a purchaser, for valuable consideration, without notice, from a fraudulent or voluntary grantee.

will be preferred to a subsequent purchaser, for a valuable consideration, without notice. The *first* purchaser has the preference, whether he takes his conveyance from the grantor or grantee.

Under the *first* section of the statute, (sess. 10. c. 44.—13. *Eliz.* c. 5.) which was made to protect *creditors*, a fraudulent conveyance by a debtor is utterly void, as to creditors, unless made for a valuable consideration to a *bona fida* purchaser, without notice of the fraudulent intent. But a *bona fide* purchaser from a fraudulent grantee, acquires no title, by the conveyance, against the *creditors* of the fraudulent grantor.

THE plaintiff, *Roberts*, being a creditor of *William Griffith*, who had absconded, obtained from *Aaron Lyon*, on the 22d of March, 1810, an assignment of a bond, given by *G.* to *L.* and a mortgage given to secure the bond, on part of a lot of ground in *Newburgh*, duly registered in *May*, 1806. The plaintiff *R.*, who paid *L.* 214 dollars and 25 cents, for the bond and mortgage, took possession of the mortgaged premises and the house thereon, and the residue of the lot; and, on the 27th of *August*, 1810, let the same by a written lease, to *Hector M'Leod* who took possession thereof, as his tenant. *Benjamin Taylor*, who had obtained, a judgment against *G.* on the 14th of *May*, 1808, for 128 dollars and 10 cents, caused the premises to be sold by virtue of an execution, issued on that judgment, and the plaintiff *S. B.* became the purchaser thereof, at such sale, for thirty dollars, and received a deed accordingly. The plaintiff *S. B.* made the purchase as trustee for the plaintiff *R.* The bill stated that *Griffith*, being indebted to sundry creditors, and there being suits then pending against him, in order to defraud his creditors, did, on the 20th of *January*, 1808, convey the said mortgaged premises to *Sarah Johnson*, for the nominal consideration of 2,000 dollars, and by another deed, he conveyed the other part of the lot to her, for the pretended consideration of 1,500 dollars. That the said deeds were collusive and fraudulent, and the said *S. J.* having paid nothing, was a trustee for *W. G.* and the lands were afterwards reconveyed to him, before *Isaac Clason* obtained a judgment against the

said *S. J.* That *G.* continued to possess and enjoy the premises, as his own, after the conveyance to *S. J.* That in 1811, the defendants pretended to claim the land under a deed from the sheriff, dated the 1st of *January*, 1810, by virtue of a judgment at law in favour of *Isaac Clason*, against *S. J.* brought an action of ejectment against *M'Leod*, and obtained a verdict, on producing the sheriff's deed, and proving, that on the 1st of *May*, 1810, *M'Leod* took a lease from the defendants, which was held sufficient to exclude proof of his being the tenant of the plaintiff. That the lease taken by *M.*, under the defendant, being after he became tenant to the plaintiff, was void, and the attornment fraudulent; he having actually entered into possession under the plaintiff.

1818.

ROBERTS
v.
ANDERSON.

The bill prayed, that the conveyances from *W. G.* to *S. J.* might be declared fraudulent and void, and that the sheriff's deed to the defendants, and all other deeds from *S. J.* or any grantee of her, to the defendants, of the premises, or any part thereof, might be declared fraudulent and void, and be delivered up, to be cancelled; and that all proper parties might release to the plaintiff *R.* and that an injunction issue, and for general relief.

The defendants, in their answer, denied any knowledge of the claim of the plaintiff. They admitted the mortgage from *G.* to *Lyon.* But averred, that *M'Leod* was their lawful tenant, on the 1st of *May*, 1810. They admitted *Taylor's* judgment and the sheriff's sale to the plaintiff *B.* They averred that there was no judgment against *W. G.* when he conveyed the premises to *S. J.* They denied all knowledge and belief of any fraud in those deeds; but believed that they were executed for good and valuable considerations, paid by, or the amount justly due to, *S. J.* They denied any reconveyance by her to *W. G.*, and stated that *Isaac Clason*, on the 15th of *May*, 1809, obtained a judgment against *S. J.* for 346 dollars and 88 cents; and that on the 13th of *December*, 1809,

the premises were sold by virtue of an execution on that judgment, and the defendant, *B. Anderson*, became the purchaser, for one dollar and fifty cents, subject to all prior incumbrances, and the other defendant became a joint owner. That *S. J.* had executed a mortgage to *Daniel Stansbury*, for 496 dollars and 88 cents. That *William King* had some equitable claim on the property; and the defendants agreed with *S. J.* to give her 167 dollars, for her quit claim, and also take up the mortgage to *Stansbury*, and pay *W. K.* 300 dollars for his claim; that *S. J.*, accordingly, executed a quit-claim deed, dated 21st of *March*, 1810, to the defendants, who paid her the 167 dollars; and on paying 439 dollars and 39 cents, took an assignment of *Stansbury's* mortgage; and on the 23d of *March*, 1810, on paying 300 dollars, obtained a release from *W. K.* and his wife. The defendants alleged that they had not heard of the claim of the plaintiffs, until after they had paid the above mentioned sums, and denied all notice of any fraud, &c. That the defendants have tendered 250 dollars, the amount of the mortgage, to the plaintiff *R.*, who has refused to receive payment. That *Alexander Dennison*, a tenant of *S. J.* and *Hector M'Leod*, on the 1st of *May*, 1810, took a lease of the premises for one year from the defendants, and became their tenant. The defendants claimed to hold as *bona fide* purchasers, without notice, &c.

*June 19.*

The cause came on to be heard this day. Among the proofs offered to be read, on the part of the defendants, were two depositions; one of *Sarah Johnson*, deceased, taken under the act passed the 4th of *April*, 1807, to perpetuate testimony, which was objected to, as inadmissible, on the ground of her being interested to support the defendants' title : the other, the deposition of *Thomas Allen*, taken before the clerk of the Supreme Court, in the absence of the Recorder of *New-York*, on the 29th of *September*, 1812, on the part of the plaintiff in an action

of ejectment depending in the *Supreme Court*, between James Jackson, ex dem, John Anderson and Benjamin S. Anderson against *Hector M'Leod*, (vide 12 *Johns. Rep.* 182.) which was objected to, because it was not taken in a cause in which the plaintiffs in this suit were parties.

1818.

ROBERTS
v.
ANDERSON.

THE CHANCELLOR. The deposition of *Sarah Johnson*, before a Master, under the act of the 4th of *April*, 1807, *to perpetuate testimony*, is inadmissible, because she was interested in supporting the title she had conveyed to the defendants. It is, indeed, stated by the Master, that her interest had been released, but no such release is produced, to enable me to judge of it, nor is any account given of its loss. It is also true that the defendants state in their answer, that she had executed to them a quit-claim deed, for which they paid her 167 dollars; but they say that they had not then heard of the claim of the plaintiffs, and deny all notice of fraud. If, however, *Sarah Johnson* possessed herself of a title to the land in question from *Griffith*, by a fraudulent agreement between them, to cover the property from creditors, as is charged, then she had not, and knew she had not, any valid title, when she conveyed to the defendants; for a valuable consideration. She took the land in fraud, and fraudulently released to the defendants, and if the charges in the bill were established, the defendants would be entitled to an action on the case, in the nature of an action of deceit, against *Sarah Johnson*, notwithstanding she conveyed to them without covenants. This is a clear and settled rule of law and equity. (*Com. Dig.* tit. *Action on the case for a deceit*, A. 8. 1 *Salk.* 211. *Risney* v. *Selby*, *Butler's note to Co. Litt. No.* 332. *Edwards* v. *M'Leay*, *Cooper's Eq. Rep.* 308.) (a). She was, therefore, directly interested when

A person who has fraudulently acquired title to land, and fraudulently conveyed it, though by a quit claim deed, without covenants, is not a competent witness for his grantee, in a suit brought against him by a person claiming it as a *bona fide* purchaser.

(a) Vide *Wardell* v. *Fosdick*, 13 *Johns. Rep.* 325. *Monell* v. *Colden*, *Ib.* 395. 2 *Caines*, 193. 1 *Fonbl.* 366. note.

1818.

ROBERTS
v.
ANDERSON.

she made the deposition, in repelling the charges in the bill, and, consequently, her deposition cannot be received.

A deposition taken in an ejectment suit at law, brought by the defendants here against a third person, as tenant, to recover the land, the subject of the suit here, is not admissible evidence against the plaintiff, being *res inter alios acta.*

The deposition of *Thomas Allen*, taken before the clerk of the Supreme Court, in the absence of the Recorder of *New York*, on the 29th of *September*, 1812, on the part of the plaintiff, in the cause then depending in the Supreme Court between "*James Jackson, ex dem. John Anderson, and Benjamin S. Anderson* v. *Hector M'Leod*," is inadmissible, because it was taken in a cause in which the present plaintiffs were not a party. It was *res inter alios acta,* and the present plaintiffs had no opportunity or power to cross examine. It cannot be said, that the present plaintiffs were parties to that ejectment suit, by their tenant, *Hector M'Leod;* for the bill charges that *M'Leod* had taken a lease under the present defendants, and that the recovery at law was had upon the ground, that *M'Leod* was the tenant of the present defendants; and the answer admits that *M'Leod* was the tenant of the present defendants. It would be a very extraordinary act of inconsistency and injustice, for the defendants to assert, and prevail at law on the assertion, that *M'Leod* was their tenant, and not the tenant of the plaintiffs; and then for them to offer an affidavit taken in the cause at law, and have the same received in this suit against the plaintiffs, on the ground that it was taken in a cause in which the plaintiffs were essentially the party.

These depositions being rejected, the cause was argued upon the residue of the testimony produced.

*S. Jones*, jun. for the plaintiffs.

*Burr*, for the defendants,

THE CHANCELLOR. There cannot be a doubt as to the operation and effect of the proof upon the question

of fraud. The two deeds from *Griffith* to *Sarah Johnson* were palpably and grossly fraudulent. Even if the deposition of *Sarah Johnson* had been admissible, it would not have been entitled to credit, in opposition to the mass of testimony clearly establishing the fraud in the conveyances to her, and her knowledge and admission of the fact.

1818.

ROBERTS
v.
ANDERSON.

The only possible question in the case, as it strikes me, is, whether *Sarah Johnson*, being a fraudulent grantee, can be the source of legal title in the defendants, assuming them to be *bona fide* purchasers, for a valuable consideration, without notice of the fraud.

It is a rule which we find in the books, (*Prodgers* v. *Langham*, 1 *Sid*. 133. *Andrew Newport's case*, *Skinner*, 423. *Smartle* v. *Williams*, 3 *Lev*. 387. *Comb*. 247. *Doe* v. *Martyr*, 4 *B. & Puller*, 332.) that a purchaser for a valuable consideration, without notice, from a voluntary or fraudulent grantee, shall be preferred to a subsequent purchaser for a valuable consideration, without notice, from the original grantor. But these are cases arising under the statute of 27 *Eliz*. which was intended to protect *bona fide* purchasers against purchasers without consideration, or voluntary grantees; this intention is equally fulfilled whether the conveyance for a valuable consideration comes from the voluntary grantor or grantee. If there be no creditors, the title of the voluntary grantee is good until there comes a *bona fide* purchaser from the grantor, for a valuable consideration. Until then, no person's rights are affected; but when that happens, the deed, as to such puchaser, is to be set aside. If, however, the voluntary grantee shall have sold, in the mean time, to a *bona fide* purchaser, he is justly to be considered as standing in the grantor's place; and that what is done by him is done by the grantor, and such purchase will stand

*Under 27 Eliz. c. 4, a purchaser for a valuable consideration, without notice, from a voluntary or fraudulent grantee, will be preferred to a subsequent purchaser for a valuable consideration, without notice from the original grantor,*

1818

ROBERTS
v.
ANDERSON.

good. Under this statute, the first purchaser for a valuable consideration, whether he takes the conveyance from the voluntary grantor or grantee, will have the preference, for the sole object of the statute was to protect such purchasers against voluntary conveyances, which, as to them, are fraudulent.

The case before me falls under the 13 *Eliz.* which was made to protect creditors from fraudulent conveyances; and here a different rule of construction prevails. The original deed from the debtor to a fraudulent grantee is " utterly void" as to creditors, and as against them, the grantee can make no conveyance, for he has no title, as against them. The statute, in its enacting clause, operates on the deed from the fraudulent debtor, and the proviso in the act applies to that original conveyance from the debtor, and saves it, when made, to a *bona fide* purchaser for a valuable consideration. Such a conveyance is supported by the proviso, however fraudulent the intention of the grantor might be; and the contrary impression which I had once received on this point from some of the *English* cases, without, at the time, adverting to this proviso, and which led me to the *dictum* in *Hildrith* v. *Sands,* (2 *Johns. Ch. Rep.*) was properly corrected by Mr. J. *Spencer,* when that cause was, afterwards, before the Court of Errors. (14 *Johns. Rep.* 498.)

But though the debtor himself may fraudulently, on his part, convey to a *bona fide* purchaser, for a valuable consideration, yet his fraudulent grantee cannot; for it is understood that the proviso in the 13 *Eliz.* does not extend to such subsequent conveyance. The policy of that act would be defeated by such extension. Its object was to secure creditors from being defrauded by the debtor; and the danger was, not that he would honestly sell for a fair price, but that he would fraudulently convey, upon a secret trust between him and the grantee, at the expense of the creditors. If the debtor sells, himself, in a case where the creditor has no lien, and sells for a valuable

*Under the third section of the statute for the preventon of frauds, (sess. 10. c. 44. 27 Eliz. c. 4.) the first purchaser for a valuable consideration, whether he takes the conveyance from the grantor or grantee, will be preferred.*

*Under the first section of the statute of frauds (sess. 10. ch. 44.—13 Eliz. c. 5.) a fraudulent conveyance by a debtor is "utterly void" as to creditors, saving a bona fide purchaser, for a valuable consideration, and without notice of the fraudulent intent.*

*But a bona fide purchaser from a fraudulent grantee acquires no title by the conveyance against the creditors of the fraudulent grantor.*

consideration, he acquires means to discharge his debts, and it may be presumed he will so apply them. If his fraudulent grantee be enabled to sell, the grantor cannot call those proceeds out of his hands, and the grantee can either appropriate them to his own use, or to the secret trusts upon which the fraudulent conveyance was made. There is more danger of abuse, and that the object of the statute would be defeated, in the one case than in the other.

The fraudulent grantee has no title as against the creditors. The deed as to them, is " utterly void ;" and the subsequent conveyance from him would, as against the creditors, have no foundation. There is, therefore, no analogy between the conveyance of the grantee under the 27th, and under the 13th of *Eliz.*; for in the former case he has a good title until a conveyance from him, or from the grantor to a *bona fide* purchaser takes place ; whereas, in the latter case, his title, as against the creditor, was absolutely void from the beginning. It would seem to be a very inadmissible proposition, that the conveyance of a fraudulent grantee can be held valid against creditors, when the statute declares the original conveyance utterly void as against them.

This subject was considered by the Supreme Court of Errors of *Connecticut*, in *Preston* v. *Crofut*, (1 *Day's Rep. N. S.* 527. note.) I have availed myself freely of the argument in that case, in which it was decided, by the opinion of six judges to two, upon their statute of frauds, which is substantially the same as the statutes of *Elizabeth*, that a *bona fide* purchaser, without notice, and for a valuable consideration, from a fraudulent grantee, had no title against the creditors of the fraudulent grantor. This may be considered as a decision under the 13 *Eliz.*; and it is eminently distinguished for accuracy of research, and closeness of reasoning. The case was discussed at the bar and upon the bench, in an elaborate manner, and with

1818.

ROBERTS
v.
ANDERSON.

very great ability; and though I entirely subscribe to the opinions of the majority of the court, it is not without the highest respect for the talent with which the opposite opinion was supported.

In the revision of our statute law, the statutes of the 13th and 27th of *Eliz.* are connected together in one act, and the provisoes in these statutes are consolidated in the 6th section of the act; but I have taken it for granted, as being a settled rule, (and one which was established by the Court of Errors,) in respect to our revised laws, that the construction of those different provisions in connection with the general proviso, remains the same since, as before the revision. And if the proviso, as applicable to the 13 *Eliz.* does not reach the case of a sale by a fraudulent grantee, (and all the judges in the case of *Preston* v. *Crofut* concurred in this,) then that decision is a direct and strong authority in this case, notwithstanding the statute of frauds in *Connecticut* may be destitute of such a proviso.

The case before me shows the necessity and wisdom of the rule, which will not allow the fraudulent grantee to convey, so as to bind the creditors of the grantor; for here the title set up is under the judgment of a creditor of the grantee, and if it was to prevail, *the creditors of the grantor* would be effectually defrauded. The conveyance would enure to the exclusion of their debts, and to the sole benefit of the fraudulent grantee.

Independent of the general doctrine, there are special reasons in this case why I think the present defendants cannot protect themselves, as *bona fide* purchasers, under a sale on execution against *Sarah Johnson*, the fraudulent grantee.

The plaintiff *Roberts* was a creditor of *Griffith*, when the judgment was entered, and the execution issued against *Johnson;* and the execution authorized and directed the sheriff to sell lands, whereof she was *seized*, on such a day. The statute alludes to a legal seisin, whereas by

the statute of frauds, she had no seisin, as against the creditors of *Griffith.* The conveyance to her was, as to them, utterly void; and judicial sales were not intended to defeat the operation of the statute of frauds. They operate only upon the fair legal title, and not where there is a want of title. The statute provides for the case of an eviction of a purchaser, on execution, on account of want of title in the defendant, and purchasers are presumed and understood to be on their guard. In this case the defendants only gave a nominal consideration of one dollar and fifty cents. It was truly a purchase upon speculation, and which could not have been made at such a price, at a *bona fide* private sale.

But what appears to me to be decisive, is the fact, that *Sarah Johnson* never was in possession, as owner, under the fraudulent deed. There were no false lights held out to deceive the world; and the case is not within the reason and policy of any rule calculated to protect a *bona fide* purchaser. Immediately, or very shortly after the execution of the fraudulent deeds of *December*, 1807, *Wm. Griffith* leased the premises to *Denniston*, for five years, and he was in possession under that lease when the defendants made their purchase at the sheriff's sale. They are to be presumed to have had notice of this fact existing before their eyes; and it was sufficient to put them upon inquiry, as to the pretended title of *Sarah Johnson.* They are not entitled to be considered as *bona fide* purchasers for a valuable consideration, without notice. They had notice, that here was no possession accompanying the deeds, and they paid only a nominal consideration.

It is, accordingly, declared, that the two deeds to *Sarah Johnson* are fraudulent and void; and that the plaintiffs ought to be quieted against any claim on the part of the defendants under those deeds, by a perpetual injunction.

Decree accordingly.