## Case No. 3,866.

DEXTER v. SMITH et al.

[2 Mason, 303.] [1]

Circuit Court, D. Rhode Island. June Term, 1821.

JURISDICTION OF FEDERAL COURTS — SUIT ON ASSIGNED JUDGMENT—FRAUDULENT CONVEYANCES.

1. Where a judgment has been rendered in a state court between citizens of different states, and the judgment has been since assigned to a citizen of the same state as the original plaintiff, the circuit court has jurisdiction to sustain a bill in equity in favour of the assignee, although the original ground of the suit. on which judgment was rendered, was a negotiable chose in action. on which the circuit court could not have held jurisdiction under the restrictive clause of the 11th section of the judiciary act of 1789, c. 20 [1 Stat. 78].

2. A mere volunteer from a grantee under a fraudulent conveyance stands in the same predicament as his grantor. as against the persons intended to be defrauded.

[1] [Reported by William P. Mason, Esq.]

This was a bill in equity brought by Edward Dexter against the defendants [Simon Smith and others], and was, in most respects, precisely like the case of Bean v. Smith [Case No. 1,174], excepting in this, that "William Stone," Jr., who was not made a party in the other case is made a defendant in this. On the 14th day of January, A. D. 1809, the plaintiff was the holder of certain notes of the late Farmers' Exchange Bank, for the payment of which William Colwell, the cashier, drew two bills of exchange upon Andrew Dexter, Jr. of Boston, in favour of Simon Smith, who indorsed the same in blank, and they were then indorsed by John Harris, Smith and Harris being stockholders and directors in said bank. The said bills were payable in ninety days, one for the sum of $5,184 44, and the other for $4,120, and were by the cashier delivered to said Dexter in payment of said notes of the bank. The plaintiff forwarded said bills to his correspondent in Boston, Philip Ammidon, to be collected and passed to the credit of the plaintiff, who was indebted to said Ammidon in a considerable sum. The bills were protested for non-acceptance and non-payment. the indorsers duly notified. and they were then forwarded by said Ammidon to Mr. Searle, of Providence, and an action commenced upon them in the name of Ammidon against said Simon Smith. A judgment was obtained, and the said Smith was committed to jail on the execution. He afterwards gave his note for the amount in conformity to the statute, and was discharged from jail on taking .the poor prisoners' oath. In the year 1818, Ammidon having adjusted his concerns with Dexter, assigned and transferred to him the said debt and judgment, and this bill in equity was brought by Dexter on the said judgment.

Searle and Snow, for plaintiff.
Mr. Whipple, for defendants.

STORY, Circuit Justice. The principal facts in this case are the same as those in the case of Bean v. Smith [supra], which has been just disposed of: and therefore it is not necessary to discuss them. I shall content myself, therefore, with a short reference to those circumstances in which they differ.

And in the first place, on the point of jurisdiction, Dexter claims as assignee of a judgment in favor of Philip Ammidon. That assignment was made long after the conveyances in September and November, 1809; but if the plaintiff's title stood on that ground alone, there would be no pretence to sustain the objection; for Ammidon is, and at that time was. a citizen of Massachusetts, and entitled, as such, to sue the present parties in this court with reference to his judgment. So that the case does not fall within the restrictive clause of the 11th section of the judiciary act of 1789, c. 20 [supra]. But in truth the plaintiff was the original holder of

the drafts, and Ammidon was his agent only, and recovered the judgment, as such, as is charged in the bill, and is admitted by the answer of Simon Smith; so that if the plaintiff was ever competent to sue, being remitted to his former right independent of the new assignment.

Another circumstance is, that the present bill proceeds against William Steere, Jr. (to whom his brother Amasa in 1817, released and conveyed all his interest) to subject the estate conveyed to them by Ahab, Darius, and Thomas Smith, by their deed of the 7th of February, 1816, to the plaintiff's debt. As to the moiety of that estate conveyed by Ahab, it is sufficient to say, as has been already stated, that as the young Messrs. Steere claim it as a gift, by the very terms of their own life lease to him, they stand in the same predicament, as if the estate were now held by Ahab; and he clearly held by a fraudulent conveyance.

As to the moiety of Darius Smith, for reasons that have already been stated, the conveyance to him by his father must be deemed fraudulent. There are some circumstances, however, in his case fortifying that conclusion, which deserve notice. The father in his answer admits, that Darius paid only $500 of the purchase by an ultimate discharge of so much of the debt due to Zephaniah Andrews, and says, that he owed his son the residue. And several of the witnesses for the respondents assert the same. I cannot, however, consider Thomas Smith or Amasa Steere as witnesses competent in this cause. Both have a direct interest, the former as a co-grantor to Amasa and William Steere, Jr. and the latter as a grantor to his brother William of the land now in controversy. See Roberts v. Anderson, 3 Johns. Ch. 371, 375. It appears, however, that Simon Smith had purchased a farm for his son Darius, in January, 1797, for $3,000, and that the deed was taken in the son's name, though the consideration was paid by the father. The gift, too, of the Lewis and Tinkham farm by the father to Darius in March, 1808, has been already adverted to in the other cause. These liberal advances to his son, considering too the attempts now made to show the father's deep embarrassment by debts, do not increase the confidence, one might be disposed otherwise to indulge towards the mass of family testimony brought into this cause, to establish debts due to the children. We should be almost driven to the conclusion, if we could believe such testimony, that there was as much profusion and extravagance, as there was want of good faith, in the conduct of the father.

The only remaining consideration is, whether the Messrs. Steere, or William, the present holder, are purchasers for a valuable consideration without notice of the fraud from Darius Smith. They were clearly conusant of the deed of conveyance to Darius and Ahab, under which they derive title, for it is referred to in the deed to them. Considering the immediate family connexion between the parties, and the age of the grand-children, it seems almost incredible, that they should not have had an intimate knowledge of all the transactions accompanying the conveyances in September and November, 1809. I observe, too, that Amasa Steere in his deposition, which if competent for any purpose, is competent for this, states, that he lived with his grandfather Simon Smith, at the time of these conveyances, and professes a thorough intimacy with the execution of the deed to Darius and Ahab, and the consideration, on which it was founded. Can any one believe, that his co-grantee was ignorant of the same facts? There is not the slightest reason to presume it; and I am not justified in allowing them the benefit of a title, which is set up under circumstances so pregnant with suspicion, and so strongly imbued with the coloring of a family compact. I shall, therefore, make the same decree in this case as in that of Bean v. Smith, adding, that Messrs. Amasa and William Steere, Jr. are not purchasers for a valuable consideration without notice, and therefore are liable to the same equities, as if the property were now in the hands of the heirs of Darius. I think, however, that they ought not to be held liable, so far as respects the lands claimed from Darius and his son Thomas, until all other funds have been exhausted.

Decree. This cause came on to be heard on the bill, answer, pleadings, and evidence in the case, (the due execution of all the deeds in the case being admitted by the parties) and was argued by counsel; on consideration whereof, It is ordered, adjudged, and decreed, as follows, to wit: That the conveyances made by the said Simon Smith mentioned in the bill and answers in this cause, bearing date the fifteenth day of September, in the year of our Lord one thousand eight hundred and nine, to the said Esther Steere and Elizabeth Foster, and to William Steere and the said William Foster, for two certain farms lying in Gloucester and Foster in the county of Providence, within said district of Rhode Island, containing three hundred and thirty five acres of land, one called the Wells farm, and the other called the Rounds farm; and also the conveyances, in the said bill and answers mentioned, made by the said Simon Smith to the said Ziba Smith, bearing date the fifteenth day of September, in the year of our Lord one thousand eight hundred and nine, for a farm or lot of land, situate in Smithfield, in said district, and known by the name of the Waterman lot, containing fifty four acres, and also the conveyances, in the said bill and answers mentioned, made by the said Simon Smith to Darius Smith, and to Darius Smith and the said Ahab Smith, bearing date the fifteenth and eighteenth days of September, in the year of our Lord one thousand eight hundred and nine,

for the farm on which the said Darius then lived, situated in Gloucester aforesaid, called the Daniel Eddy farm, lying on both sides of the turnpike road; and also the deed, in the said bill and answers mentioned, made by the said Simon Smith to the said Ziba Smith, bearing date the eighteenth day of September, in the year of our Lord one thousand eight hundred and nine, for a lot of land situate in said Gloucester, containing twenty-six acres; and also the deed, in the said bill and answer mentioned, made by the said Simon Smith to the said Ziba Smith and Simon Smith, Jr. bearing date the twenty-second day of November, in the year of our Lord one thousand eight hundred and nine, for the farm whereon the said Simon Smith then lived, situate in said Gloucester, it being all the land he had purchased of John Eddy, Elijah Cooke, and Abel Potter, and is about three hundred acres, were made by the said Simon Smith with the intent to defraud his creditors, and particularly the plaintiff, and are, therefore, as to the plaintiff utterly void.

And it further ordered, and decreed, that the deed, in the said bills and answers mentioned, made by Darius Smith, Thomas Smith, and Ahab Smith, to William Steere, Jr. and Amasa Steere, bearing date the seventh day of February, in the year of our Lord one thousand eight hundred and sixteen, of the Daniel Eddy farm, before mentioned; and also that the lease, in the said bill and answers mentioned, made by the said Amasa Steere, and William Steere, Jr. to the said Ahab Smith, bearing date the seventh day of February, A. D. 1816, for that part of the Daniel Eddy farm, which the said Ahab Smith had conveyed to the said Amasa and William Steere, Jr. on that day; and also that the deeds in the said bill and answers mentioned, made by the said Ziba Smith to the said Simon Smith, Jr. and by the said Simon Smith, Jr. to the said Ziba Smith bearing date the thirtieth day of May, in the year of our Lord one thousand eight hundred and twelve, of certain portions of the said farm, that Simon Smith conveyed to them by deed, bearing date the twenty-second day of November, A. D. 1809; and also that the deed, made by the said Amasa Steere to the said William Steere, Jr. mentioned in said bill and answers, bearing date the first day of January, A. D. 1818, for the one half part of the said farm conveyed to the said Amasa and William Steere, Jr. by the said Darius, Thomas, and Ahab Smith, on the seventh day of February, A. D. 1816, were made by the said Darius, Thomas, Ahab, Ziba, Simon, Jr. Amasa, and William, Jr. in furtherance, and with the knowledge of the original intention of the parties, to defraud the creditors of the said Simon Smith, and particularly the plaintiff, and are, therefore, as to the plaintiff, utterly void; that the said conveyances before mentioned, having originated in a meditated fraud upon the creditors of the said Simon Smith, cannot be permitted to stand

as a security for any debts then due to the grantees, or for any subsequent advances by them made in furtherance of the original intention of the parties thereto.

And it is further declared, and decreed, that the plaintiff has a right to be paid the principal debt due to him, with interest up to the time of this decree, and that the same ought to be, and is decreed to be, a charge on the same lands, and on the rents and profits, (making all proper allowances) which have accrued to the respective respondents, or might have accrued to them without wilful default, since the estates mentioned in the same conveyances have come to their hands, possession, and use; and it is declared, and decreed, that the said lands, rents, and profits are specifically holden for, and charged with, the payment of the plaintiff's said debt.

And it is further declared, and decreed, that the respondents be permitted to pay in the proportion of the value of the estates respectively conveyed to them, to be ascertained by a master, the amount due to the plaintiff for principal and interest, with costs, if they shall elect so to do, within sixty days after the date of this decree, and in that event the plaintiff is to assign to them, by conveyances to be approved by a master, all his right and title to the judgments stated in his bill, and to the debts due, and his right and title under this decree; and the respondents shall be admitted to hold the same accordingly as a charge on the same lands; but if the respondents shall not pay the said debt and costs, within the period aforesaid, then the same master is to ascertain the rents and profits of the said estates as aforesaid, which are to be paid by the respondents respectively towards the discharge of the plaintiff's debt, and if this fund shall not be sufficient, or shall not be productive, then it is further declared, and decreed, that the master shall sell the lands so conveyed to the respondents by the conveyances aforesaid, or a sufficiency thereof, to pay the plaintiff's debt, interest and costs, at public auction to the highest bidder, in manner as shall hereafter be decreed by the court, and make due and legal conveyances thereof to the purchaser or purchasers thereof; and the respondents Simon Smith, Ziba Smith, Ahab Smith, Simon Smith, Jr., Esther Steere, William Foster, Elizabeth Foster, and William Steere, Jr. shall respectively join in such conveyance or conveyances, releasing their right, title, and interest therein, and thereto, and covenanting against their own acts, in such manner as the master shall approve, and the proceeds of such sale shall be brought into this court to discharge the plaintiff's debt, and costs of suit.

And it is further declared, and decreed, that it be further referred to the same master to ascertain by an examination of the plaintiff on oath and otherwise, what was the value, at which the plaintiffs received the

Farmers' Exchange bills for which the drafts, on which his judgments were founded, were given, at the time when he received or bought the same, and that the plaintiff is to be allowed that sum, the damages on said drafts at the rate allowed by law on the bills of the like nature, and his costs of suit, in the state courts of Rhode Island, as his principal debt, and the interest is to be computed thereon as aforesaid; and the same master is to make his report as soon as may be, and in the mean time all further proceedings and orders are reserved for the consideration of the court.