May Term, 1833.

DUGAN
v.
VATTIER.

3b 245
129 436

## Dugan and Another *v.* Vattier and Another.

A debtor to defraud his creditors, conveyed his real estate to a person with notice of the fraud. *Held*, that a *bona fide* purchaser, for a valuable consideration, from the fraudulent grantee,—having paid the purchase-money, and received a deed, before notice of the fraud,—will hold the estate against the creditors of the grantor. *Aliter*, if the purchaser from the fraudulent grantee had notice of the fraud, before the payment of all the purchase-money.

The creditors of a deceased debtor, having obtained separate judgments against his administrator, may unite in a bill in chancery to set aside the intestate's fraudulent conveyance of real estate, and subject it to the payment of their judgments.

ERROR to the *Dearborn* Circuit Court.

BLACKFORD, J.—*William Burke* and *Charles Vattier* filed a bill in chancery against *Thomas Dugan,* *Elias Conwell*, and others, in the *Dearborn* Circuit Court.

The bill charges, that *James Conn* in his life-time was indebted to each of the complainants; that since *Conn's* death, the complainants have obtained judgments against his administrator for their respective claims; and that there is no personal property to satisfy the judgments. It is also charged, that, pursuant to a corrupt agreement between *Conn* and *Dugan*, a conveyance of all *Conn's* real estate was executed by him to

*Friday,*
*May 31.*

*Dugan*, without consideration, for the purpose of defrauding the complainants and others, the creditors of *Conn*. It is further charged, that *Conwell* fraudulently purchased a part of the land from *Dugan*, with notice of the fraud in *Dugan's* title. The object of the bill, is to obtain a decree subjecting the land in question to the debts of *Conn*.

All the material charges in the bill are denied in the answers of *Dugan* and *Conwell*.

The following are believed to be the facts:—In 1820, *Conn*, being indebted to various persons in a much greater amount than his property was worth, conveyed all his real estate to *Dugan*, without any consideration, for the express purpose of fraudulently securing it, for his own use, from the demands of his creditors. At the date of this conveyance, *Conn* owed the debt now demanded by *Burke*, to the person from whom *Burke* obtained the right to it. After that time, *Conn* became indebted to *Vattier*. In 1825, *Dugan* sold and conveyed a part of the land to *Conwell* for 300 dollars. *Conwell*, after having paid 200 dollars of the purchase-money, received notice of the fraudulent title under which *Dugan* claimed. The residue of the purchase-money still remains unpaid. Since these transactions, *Conn* being dead, judgments have been obtained by *Vattier* and by the person under whom *Burke* claims, for their respective debts, against *Conn's* administrator.

Upon these facts, the Circuit Court decreed in favour of the complainants against *Dugan* and *Conwell*.

There can be no doubt respecting the correctness of the decree in this case, except as it regards the title of *Conwell*. It is contended by him, that as his deed was executed, and two-thirds of the purchase-money paid, before notice of the fraud, his title cannot be impeached. This is a case in which a debtor makes a deed to defraud his creditors, and the fraudulent grantee sells the land to a third person. We have a statute which expressly declares the original deed, in such a case, to be absolutely null and void; and it is a question which has excited great interest, whether such a fraudulent grantee as *Dugan* is, can, consistently with the provisions of a statute like ours, convey to any person, under any circumstances, a valid title to the premises. That he cannot do so, is decided by the Supreme Court of *Connecticut*, in *Preston* v. *Crofut*, 1 Day, 527, note; and by the Court of chancery in *New-York*, in

*Roberts* v. *Anderson*, 3 Johns. Ch. Rep. 371.. But a decision, directly to the contrary, has since been made by the Court of Errors in *New-York*, in *Anderson* v. *Roberts*, 18 Johns. R. 515; and by the Circuit Court of the *United States* in the first circuit, in *Bean* v. *Smith*, 2 Mason, 252.

If we concurred in opinion with the Supreme Court of *Connecticut*, and the Court of chancery of *New-York*, that opinion would put an end, at once, to the question of notice in the case before us. We should then consider, that *Conwell* could have no claim to the premises under his deed from *Dugan*, even if all the purchase-money had been paid by *Conwell*, previously to his notice of the fraud. The contrary opinion, however, as expressed in the cases of *Anderson* v. *Roberts*, and *Bean* v. *Smith*, to which we have referred, appears to us to be the most reasonable, and to comport best with the spirit of the common law and of the statute. It becomes necessary for us, therefore, to determine what effect the notice, received by *Conwell* whilst one-third of the purchase-money was unpaid, has upon the validity of his title. The most that he can ask, under a statute which declares his grantor's title absolutely void, is to be placed upon the same footing with the purchasers of real estate, for which some other person, at the time of the purchase, has an equitable title.

The question, as to the effect of a notice of a prior equity, is not a new one in this Court. It was discussed here several years ago, and an opinion then expressed, that unless the deed be executed and the purchase-money paid, before notice, the prior equity must prevail. *Gallion* v. *M'Caslin*, *November* term, 1820. So, also, it was held by this Court at the last term, that a party cannot be considered as an innocent purchaser, if, after the purchase, but before payment of the purchase-money, he receive notice of the prior equity. *Hunter* v. *Holcroft et al.* The same doctrine is laid down by Mr. Sugden. His language is as follows:—"Notice, before actual payment of all the money, although it be secured, and the conveyance actually executed, or before the execution of the conveyance, notwithstanding that the money be paid, is equivalent to notice before the contract." Sugd. on Vend. Phila. ed. of 1820, p. 530.

That the deed must be executed before the receipt of the notice, is decided in *Wigg* v. *Wigg*, 1 Atk. 382; and that the purchase-money must be paid before the notice, is decided in

May Term,
1833.

DUGAN
v.
VATTIER.

*Harrison* v. *Southcote*, 1 Atk. 528, in *Story* v. *Lord Windsor*, 2 Atk. 630, and in *Tourville* v. *Naish*, 3 Peere Williams, 307. We have been referred by the counsel of *Conwell*, for a contrary opinion, to the case of *Youst* v. *Martin*, 3 Serg. & Rawle, 430. The previous decisions, however, which we have cited, must govern the case before us. It is our opinion, that the transaction between the fraudulent grantee and the purchaser from him, must be completely closed, by the payment of all the purchase-money and by the execution of the deed, before the notice, or the purchaser cannot hold the property from the original grantor's creditors, whom the original grantor and grantee have attempted to defraud (1).

It is objected by the plaintiffs in error, that the complainants, having distinct demands, should have brought separate suits. That objection is answered by the case of *Brinkerhoff* v. *Brown*, 6 Johns. Ch. Rep. 139.

STEVENS, J. having been of counsel in the cause, was absent.

*Per Curiam.*—The decree is affirmed with costs.

J. *Sullivan*, for the plaintiffs.

G. H. *Dunn* and D. J. *Caswell*, for the defendants.

(1) This question has been decided, in accordance with the case in the text, by the Court of Appeals of *Virginia*. *Carr* and *Green*, Js. held, that to sustain the plea of a purchaser without notice, the party must be a *complete* purchaser before notice; that is, he must have obtained a conveyance, and paid the *whole* of the purchase-money. *Carr*, J. refers to most of the authorities cited in the text, and also to *Moore* v. *Mayhow*, 2 Freem. 175,—*Jones* v. *Stanley*, 2 Eq. Cas. Abr. 685,—*Jerrard* v. *Saunders*, 2 Ves. jr. 454,—Mitf. Pl. 215, 16,—*Hardingham* v. *Nicholls*, 3 Atk. 304,—2 Newl. Eq. 145,—and Beame's Pl. 247. He concludes by saying—"I cannot see how a defendant can, in the character of purchaser without notice, avail himself of payment of a *part* of the purchase-money, though paid before notice, and have a decree of the Court that such payment should constitute a lien on the land: it is not at all within the issue: it does not make him a *purchaser without notice:* and without this, he cannot interfere with the prior lien. Suppose, instead of *part*, he had paid the *whole* of the purchase-money, but got notice before he had a deed; he would surely have as much right to have the *whole*, as a *part*, made a lien on the land; and this being the full value of the land, would wholly disappoint the prior incumbrancer. I am clearly of opinion, therefore, that the purchaser must show, that he had paid the *whole* consideration before notice, in order to protect his purchase."

*Cabell*, J. dissented, saying that the purchaser should be protected to the extent of his payment. The other two judges were absent. *Doswell* v. *Buchanan's ex'rs*. 3 Leigh, 365.

There is, also, the following recent case on the subject, in the *United States'*

Circuit Court, first circuit. A bill in equity was brought to set aside a conveyance asserted to have been procured by fraud. One of the defendants pleaded, that he was a *bona fide* purchaser under the grantee of parcel of the premises, without notice of the asserted fraud, and that he had paid a part of the consideration-money, and that the residue was secured by mortgage. *Held,* that this plea furnished no bar to the bill; that it should have averred, that the *whole* consideration of the purchase had been paid, before notice of the plaintiff's title. *Wood* v. *Mann,* 1 Sumner, 506.