*J. M. Hanna,* for appellee.

————●————

RHODES and Another *v.* GREEN and Another.

FRAUDULENT CONVEYANCE.—*Innocent Purchaser.—Notice.—Creditor.—Actions.—Purchase-Money.*—Where lands have been conveyed to defraud creditors, to an innocent purchaser, who, however, while owing the purchase-money, or part thereof, has notice of the fraud, creditors may bring an action to set aside the conveyance as fraudulent and subject the land to the payment of debts, to the extent of the unpaid purchase-money; and they are not limited to proceedings supplemental to execution.

FRAUD.—*Evidence.*—Fraud may be found from circumstances as well as positive evidence.

RESULTING TRUST.—*Cestui que trust.*—Where lands are purchased by one with the money of another, and the conveyance is made in the name of the former, without the consent of the latter, the lands are subject to a resulting trust in favor of the latter, and are not liable for the debts of the former.

CREDITOR.—*Warranty Deed.—Eviction.— Breach of Warranty.—Time.*—Where the grantee of a warranty deed of real estate incumbered by judgments against former owners is evicted by the purchaser at sheriff's sale under such prior judgments, he is a creditor of his grantor, and is such from the date of the deed, and may sue to set aside conveyances made by his grantor to defraud creditors.

EVIDENCE.—On the trial of an action to set aside fraudulent conveyances, it is proper that the plaintiff should introduce evidence to prove who paid the purchase-money, how it was paid, and who were concerned in having the deed made, and to identify the deed with the transaction.

SUPREME COURT.—*Presumption.—Examination of Witnesses.*—The Supreme Court will presume—the contrary not being shown—that there was a good reason justifying the court below in allowing plaintiff's witness to repeat, after the close of the defendant's evidence, what he had previously sworn to.

SAME.—*Exceptions.—Evidence.*—The Supreme Court will not consider general objections to the introduction of evidence where no particular grounds are pointed out.

APPEAL from the Warren Circuit Court.

DOWNEY, C. J.—Two errors are assigned in this case: 1. The overruling the demurrer to the complaint. 2. The refusal of the court to grant a new trial.

The action was brought by the appellees against the appellants. The material facts in the complaint are, that Caleb Rhodes, on the 6th day of August, 1860, conveyed to John R. Green and Henry Green, each, a certain tract or tracts of land in Illinois. In June, 1863, an action of ejectment was commenced against the Greens for the lands in Illinois. Caleb Rhodes had notice of this action, and assisted in the effort to defend it, but the effort was not successful. The lands were taken from the Greens. In October, 1864, the Greens each sued Caleb Rhodes, in the Warren Circuit Court, on the covenants in the deeds which he had made to them, and they afterward recovered judgments, had executions issued on them, and returns of no property found. In July, 1863, Caleb Rhodes conveyed certain real estate in Warren county to Joseph H. B. Rhodes, his son, and codefendant. In July, August, November, and December, 1862, and in January, 1865, certain third persons conveyed other tracts of land to said Joseph H. B. Rhodes. In June, 1866, Joseph H. B. Rhodes and his wife conveyed said real estate to Clark B. Slade and Joseph Slade, who are defendants, and who paid the purchase-money, except four thousand dollars, and took their deeds. For the remaining four thousand dollars they executed their notes, secured by a mortgage on the land, to Sarah J., the wife of Joseph H. B. Rhodes.

It is alleged that the lands conveyed by such third persons were the property of Caleb Rhodes, and that it, as well as that which was conveyed by Caleb Rhodes himself to Joseph H. B. Rhodes, was conveyed to said Joseph H. B. to defraud the said plaintiffs, as his creditors, as aforesaid. Sarah J. died after the commencement of this action, and in an amended complaint it is alleged that her husband is her only heir. All the defendants, including Sarah J. Rhodes,

are charged with fraud, except that it is conceded that the Slades were guilty of no actual fraud; but as they had notice of the alleged fraud when they yet owed four thousand dollars of the purchase-money, it is claimed that the land is liable in their hands to that extent.

The demurrer to the complaint was for the reason that it did not state facts sufficient to constitute a cause of action.

Caleb and Joseph H. B. Rhodes answered in two paragraphs: 1. The general denial. 2. That in the year 1845 the mother of the defendant Joseph H. B. Rhodes placed in the hands of Caleb Rhodes money and property belonging to her in her own right, amounting to three thousand dollars, in trust for Joseph H. B. Rhodes, her son, which trust was evidenced by an instrument of writing executed at that time, but which has since been lost, to be held, kept, and controlled by said Caleb Rhodes, in trust for said Joseph, until he was twenty-one years of age; that Caleb kept said fund separate from his own, and with it purchased said lands for said Joseph, which he deeded to said Joseph in July, 1863, having had the deed made to himself therefor on account of the minority of said Joseph, and conveyed it to him, after he was twenty-one years of age, in fulfilment of said trust; that all the money paid therefor belonged to said Joseph in his own right; that the residue of the lands mentioned in the complaint were purchased by, and paid for by, said Joseph with his own funds; wherefore, etc.

Slades answered, admitting the allegations of the complaint and expressing a willingness to pay the money due from them as the court might direct.

There was a reply in denial of the second paragraph of the answer of the Rhodeses.

A jury tried the case, and found a verdict for the plaintiffs, on which, after overruling a motion for a new trial, the court rendered judgment.

The first question relates to the sufficiency of the complaint. Counsel for the appellants insist that if the plaintiffs have any remedy, it is by a proceeding supplemental to exe-

cution, and not by an action like this. They regard the proceeding in this case as an attempt to subject the money due from the Slades to Sarah J. Rhodes, and to her husband since her decease, on the notes and mortgage, to the payment of the judgment of the plaintiffs. But we do not so consider it. We think it is a suit to set aside fraudulent conveyances of the land conveyed by Caleb Rhodes, and by others at his instance, to Joseph H. B. Rhodes, and by him to the Slades, and to subject the land to the payment of the judgments. It may be true—we think it is—that as the Messrs. Slade had no notice of any fraud when they took their deed and paid their first payment of the purchase-money, they may be protected as to the amount paid by them on the land. *Lewis* v. *Phillips*, 17 Ind. 108. But to entitle them to claim as innocent purchasers, they must not only have made the purchase and received the deed, but they must have paid the whole of the purchase-money. If a purchaser receive notice of an equity before he has received his deed, or paid the purchase-money, it is in time. *Dugan* v. *Vattier*, 3 Blackf. 245; *Parkinson* v. *Hanna*, 7 Blackf. 400. The court correctly overruled the demurrer.

The next question relates to the correctness of the court's ruling in refusing to grant a new trial. The first irregularity complained of relates to the admission in evidence, over the objection of the defendants, of the various items of documentary evidence in the case. The objections were general. No particular defect or unfitness is pointed out, and we see none. *Schenck* v. *Butsch*, 32 Ind. 338.

Objection was made to the fourth and seventh questions and answers thereto in the deposition of Clark P. Slade, and the objection was overruled. The fourth paragraph states where the deed to him and Joseph Slade was written, who had it written, and who were present when it was written and signed. In the seventh paragraph the witness states that in the fall of 1862 he conveyed an undivided interest in part of the land in question to Joseph H. B. Rhodes; that Caleb Rhodes paid him the money for it, but he did not

know whose money it was. The interest conveyed belonged to his wife. He did not make the bargain for the sale, but simply signed the deed and received the money.

We think it was competent, in the first place, for the plaintiffs to show who were concerned in having the deed made, though it may not have been important where it was written. The deed referred to in the answer to question seven was already in evidence; and it is referred to, we presume, for identification only. It was proper to allow the plaintiffs to show that Caleb Rhodes paid the money, though the witness did not know whose money it was.

After the defendants had closed their evidence, the court allowed the plaintiffs—though it was opposed by the defendants—to introduce and examine one Joseph Brown as a witness. The defendants objected, on the ground that this evidence was not rebutting, and had been given in chief. If there was any good reason for doing so, we think the court might allow a witness examined by the plaintiff to repeat, after the defendant's evidence was through, what he had previously sworn to. We ought to presume that there was some justifiable reason for so doing in this case, as the contrary is not shown.

Exception is taken to the refusal of the court to give instructions numbered three and five, asked by the defendants. Number three is as follows: "If the jury believe, from the evidence, that that portion of the land in controversy conveyed by Caleb Rhodes to Joseph H. B. Rhodes was, in the first instance, purchased with the funds the said Caleb Rhodes held in trust for said Joseph H. B. Rhodes, then their finding as to such lands should be for the defendants; and it would be unnecessary for them to inquire into any further facts pertaining to said lands, because they would, in no event, be liable for the debts of Caleb Rhodes."

This instruction was "refused, except as given in other instructions." In the first charge, after some general observations as to trusts and trust funds, the court said to the jury: "If, then, the jury believe, from the evidence, that

the property deeded by Caleb Rhodes to Joseph H. B. Rhodes, described in the complaint, was purchased with money or funds which he, the said Caleb, held in trust for his said son, the same having been placed in the hands of the said Caleb by the mother of the said Joseph H. B. Rhodes, in trust for the said Joseph H. B. Rhodes, then said lands were the property of the said Joseph H. B. Rhodes, in his own right, and are not, nor are their proceeds, liable for the debts of Caleb Rhodes; for an estate purchased in the name of one, with money belonging to another, is subject to a resulting trust in favor of the party to whom the money belonged, if the conveyance was taken without the consent of the beneficiary, or if from infancy he was unable to consent."

When considered with reference to the case made by the pleadings and the evidence in the case, we cannot see any material difference between these two propositions. The case is put on the ground, both in the pleadings and the evidence, that these lands were paid for with money in the father's hands, which came from the mother, conveyed to the father and by him to the son, in fulfilment of the trust. The charge given is exactly applicable to that state of facts, and superceded the necessity of giving the second.

The fifth charge was as follows: "Before the plaintiffs can recover in this action, they must show to your satisfaction, by a clear preponderance of the evidence, that at the time of the conveyance by Caleb Rhodes to Joseph, his son, these plaintiffs had a valid subsisting claim or debt capable of being enforced by a recovery in a court of law of competent jurisdiction (either then or upon its maturity). They must also show, by a clear preponderance, that even if such a claim was existing, the said Caleb made the conveyance for the purpose and with the intention of defrauding his then existing creditors. Also, that by virtue of such conveyance these plaintiffs were, in fact, defrauded. If this conveyance was made in pursuance of a family settlement, and had been made by Caleb many years previous, and

made without any fraudulent or evil intent upon his part, and there was no existing debtor injured thereby (or liabilities incurred by him), and it was received by Joseph without fraudulent intent, the plaintiffs would not be entitled to recover."

The court modified this instruction by inserting the words in parenthesis, and the defendants excepted to such modifications.

The evidence shows that the lands in Illinois conveyed to the Greens by Caleb Rhodes were incumbered by judgment in the United States Circuit Court for the southern district of Illinois against former owners of said land, and that the land was sold on that judgment, and an action of ejectment was brought against the occupants of the land before July 8th, 1863, the date of the deed from Caleb Rhodes to Joseph H. B. Rhodes, though judgment in the ejectment suit was not rendered until in January, 1864. The evidence fully justifies the conclusion that Caleb Rhodes was anticipating trouble from the incumbrance on this Illinois land from a date much earlier than the date of this deed.

Under the circumstances, we think it quite clear that the Greens should be regarded as creditors of Caleb Rhodes from the date of his deed to them, which was August 6th, 1860. He then conveyed them incumbered real estate, and he could not, by fraudulently conveying away his property, prevent them from reaching it in the hands of those affected by the fraud. There is no reasonable objection to the charge, as modified and given.

The following instruction was given by the court, on its own motion, and there was an exception to it: "If the jury believe, from the evidence, that the plaintiffs recovered judgments against Caleb Rhodes in the Warren Circuit Court, and that those judgments were founded upon the covenants of deeds made by Caleb Rhodes to the plaintiffs, Caleb Rhodes could not make a voluntary conveyance of his property after the delivery of said deeds, nor could he convey to any person, except an innocent purchaser for value,

so as to avoid any judgment which might be recovered on the covenants of said deeds."

Taken in connection with the evidence, which shows that Caleb Rhodes divested himself of all his property subject to execution, this charge is not erroneous. If it had appeared that he retained in his hands ample property to meet every claim which might be made against him on the covenants in the deeds, the instruction might not have been correct, for the mere fact that one is indebted does not prevent him from voluntarily conveying away a part of his property.

Again, the court instructed the jury as follows: " The principal question for you to determine in this case is, with whose means were the lands in controversy in this case purchased by Caleb and Joseph H. B. Rhodes? And the plaintiffs in this proceeding can only follow such, if any there be, of the lands in controversy which may have been purchased with the money of Caleb Rhodes."

It was asserted in the answer, and the evidence of the defendants was produced to show, that the money with which all the land in question was purchased was the money of Joseph H. B. Rhodes; hence the question, whose money paid for the land was the principal question. The other branch of the charge; that is, that the plaintiffs can only follow such of the lands, if any, as were purchased with the money of Caleb Rhodes, is in accordance with the law as given by the court in the first of the charges asked by the defendant, and, we think, is correct.

The last point made is, that the verdict is not sustained by sufficient evidence. This point is urged upon us quite strongly. It is insisted that it is not shown that there was any fraud on the part of Joseph H. B. Rhodes, or on the part of his deceased wife, under whom he claims the remaining four thousand dollars of the purchase-money from the Slades. But we think the circumstances attending these transactions, from the time of the execution of the first deed to Joseph H. B. Rhodes, in July, 1862, down to the making

## MAY TERM, 1871. 15

The Jeffersonville, Madison, and Indianapolis R. R. Co. *v.* Beatty.

of the last deed to him in January, 1865, are quite unusual and suspicious, and needed explanation.

Since fraud is a question of fact, and not of law, it is the peculiar province of the jury to decide upon the facts, the credibility of the witnesses, and the weight and effect of the evidence. Fraud may be found from circumstances as well as from positive evidence. Juries do not generally incline too much against fraud; on the contrary, it is feared that it too frequently escapes detection, on account of the cunning and artifice of those who engage in it.

It seems hardly possible that Joseph H. B. Rhodes did not know the character of these various conveyances. Sarah J. Rhodes was his wife. The notes and mortgage were made payable to her without any apparent reason for it; for it is not shown that she paid anything for them. Upon the whole, we are of opinion that on the evidence we cannot reverse the judgment.

. The judgment is affirmed, with costs.

BUSKIRK, J., dissents, on the ground that the plaintiffs were not creditors of Caleb Rhodes when the deeds in question were made.

*Monroe M. Milford, Marshall M. Milford, A. A. Rice*, and *J. Buchanan*, for appellants.

*J. H. Brown, B. F. Gregory*, and *J. Harper*, for appellees.