# CHARLESTON.

### BLACKSHIRE v. PETTIT.

Submitted June 8, 1891.—Decided November 14, 1891.

| 35 | 547 |
|----|-----|
| 41 | 278 |
| 35 | 547 |
| 48 | 281 |
| 35 | 547 |
| f50 | 690 |
| 35 | 547 |
| 55 | 497 |
| 35 | 547 |
| '02 | 518 |
| 62 | 521 |
| 35 | 547 |
| 66 | 473 |

1. FRAUDULENT CONVEYANCES—CONSIDERATION—BURDEN OF PROOF —POSSESSION—KNOWLEDGE OF FRAUD.

   Under our statute against fraudulent conveyances, etc., Code, 1891, c. 74 a *bona fide* purchaser for valuable consideration, who had no notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor, is protected.

2. FRAUDULENT CONVEYANCE—PURCHASER—CONSIDERATION.

   When the plaintiff has shown that the conveyance was made by the grantor with intent to delay, hinder or defraud creditors, then the grantee must meet this by showing that he was a purchaser for value, and without notice of the fraudulent intent of his grantor; and the recital in the deed of the payment of the purchase-money is not sufficient.

3. FRAUDULENT CONVEYANCE—PURCHASER—CONSIDERATION.

   Possession is *prima facie* evidence of ownership; but when the fact of the grantor remaining in possession is satisfactorily explained, as, for example, that he is in as a renter, and not as the owner, holding in good faith under his grantee, and not under any secret trust for his own benefit, such remaining in possession does not invalidate the conveyance to the purchaser for value without notice.

4. FRAUDULENT CONVEYANCE.

   A case in which it is *held* that the grantee of a fraudulent grantor has satisfactorily met and repelled the presumption that he had knowledge or notice of the grantor's fraudulent intent.

*Linn & Hamilton* for appellant, cited 22 W. Va. 586; 23 W. Va. 952.

*J. G. Schilling* for appellees, cited 12 S. E. Rep. 509; 22 W. Va. 357 p't 9 of Syll; 17 W. Va. 769; 23 W. Va. 639.

HOLT, JUDGE:

This is a suit in equity brought in the Circuit Court of Calhoun county on the —— day of ———, by plaintiff below, Mary R. Blackshire, against Silas Petitt and others, impeaching as fraudulent against her, as a creditor of Joseph S. Petitt, a deed executed by him and wife on September 6, 1886, conveying to his father, Silas Petitt, the tract of land of fifty acres in controversy.

The bill charges that on the 9th day of May, 1883, she, the plaintiff, purchased of Joseph S. Petitt and Mattie E. Petitt, his wife, a tract of land of one hundred and fourteen acres on the Little Kanawha river in Calhoun county, at the price of five hundred and fifty dollars, paid one hundred dollars on the day of purchase, and that for the remainder, four hundred and fifty dollars, her husband, the defendant John R. Blackshire, executed to Mattie E. Petitt his eight bonds dated May 9, 1883—one for one hundred dollars, due August 1, 1883; the seven others for fifty dollars each, due, respectively, in two, three, four, five, six, and seven years thereafter; and by deed of same date Petitt and wife conveyed the land to plaintiff by deed of general warranty. The first bond was for one hundred dollars, due August 1, 1883. This was paid, also two of the fifty dollar bonds. These bonds were paid and lifted; other payments are claimed; also damages for improvements made— amounting in all to three hundred and eighty three dollars.

Under this deed plaintiff took possession, and held it until February 15, 1887, when the land was sold under decree of the court in suit of William F. Wiant against Simon Williams and others, and bought by Wiant, who was put in possession by the court under his purchase. The record of the suit of W. F. Wiant against Simon Williams and others is made a part of plaintiff's bill, but it is not brought here as a part of this record.

It seems that the tract of one hundred and fourteen acres had formerly belonged to Simon Williams, the father of Mattie E. Petitt; that he had given a deed of trust on it to secure the payment of a debt to Wiant, and had afterwards conveyed it, or a part of it, to his daughter. The amount of the trust-debt and other particulars do not appear in this present record, and do not seem to be regarded as material to this controversy.

The plaintiff thus lost her land, the covenant of general warranty was broken, and she was entitled to damages, and claimed the sum of three hundred and eighty three dollars, which includes, besides the purchase-money paid, the sum of seventy two dollars for permanent improvements. Plaintiff then alleges that neither defendant Joseph S. Pettit nor Mattie E. Pettit, his wife, has any property, real or personal, known to the plaintiff, out of which the payment of her demand can be enforced. She charges that the deed of September 6, 1886, from Joseph S. Pettit and Mattie, his wife, to defendant Silas Pettit, conveying the tract of fifty acres by deed of general warranty for the consideration of five hundred dollars recited as in hand paid, was made by the grantors upon a consideration not deemed valuable in law, and with intent to delay, hinder, and defraud the creditors of Joseph S. Pettit, and that the deed was accepted by Silas Pettit, the grantee, with full knowledge of such intent; that the recited consideration was not real, but pretended, and that Silas Pettit was not a *bona fide* purchaser, but a secret trustee, who was to hold for the use and benefit of the grantor; that it was made soon after the institution of the suit of Wiant against Williams, to which Mattie E. Pettit was a party; that, since the conveyance, Joseph S. Pettit and wife had continued to occupy and use as their own the fifty acres without the payment of any rent; and that Joseph S. Pettit had offered to sell the land, which offer was known to Silas, who said any sale made by Joseph S. would be approved by him.

Under section 38, chapter 125, Code, plaintiff verified her bill by affidavit, thereby requiring the defendants in like manner to verify their answers; but this, under our present rules of equity pleading, only puts the plaintiff on sat-

isfactory proof of the truth of the material allegations denied, and any evidence which satisfies the court or jury of the truth thereof shall be sufficient to establish the same. Section 59, chapter 125, Code, p. 810. This rule is the same whether denied under oath or not.

Silas Pettit answered under oath as required, alleging that he was a purchaser of the fifty acres conveyed to him for a valuable consideration, viz., the five hundred dollars named in the deed, and without any knowledge or notice of the fraudulent intent of his grantor, J. S. Pettit, if any such intent existed on the part of Joseph S. Pettit; also answering and explicitly denying all the material allegations that he was not such *bona fide* purchaser for value; and that his son remained on the land since the sale and conveyance, but under an arrangement made for the use and occupation thereof and the payment of rent. J. S. Pettit and Mattie E., his wife, also answered under oath, denying all fraud and want of valuable consideration, and alleging that the deed was made in good faith for a valuable consideration, and not with intent to hinder, delay or defraud his creditors, and that he had remained on the land, but under a contract to pay rent.

To these answers general replications were entered, and pleadings on the part of other defendants were filed, but it is not necessary to notice them.

Thirteen witnesses were examined, and their depositions are in the record, but I do not deem it necessary to comment on them in detail. I think it sufficiently appears from the evidence that the deed for the fifty acres was made by Joseph S. Pettit with intent to delay, hinder and defraud his creditors; so that only two questions remain to be determined: (1) Was Silas Pettit a purchaser for valuable consideration? (2) Had he notice of the fraudulent intent of his grantor?

1. Was Silas Pettit a purchaser for value? If he was not, then the second question, as to notice, becomes immaterial. Payment of the purchase-money is a matter peculiarly within the purchaser's own knowledge; therefore he must furnish satisfactory proof when it is called in question in this class of cases; the recital in the deed is not suffi-

cient.   This Silas Pettit has attempted to do by the evidence of himself, of his son, and of his son's wife.   In his own deposition he gives the time, place, amounts, and modes of payment.   He states that he paid about sixty dollars in amount found due him on settlement, and about two hundred dollars in money, he thinks a little more than that, at his house, somewhere between the first and middle of September, 1886, and at the October term of the Circuit Court of that year paid two hundred and forty eight dollars, the balance.   At the payment made at his house his wife, son and daughter were present, but his son is dead, and his daughter is in the west.

Joseph S. Pettit in his deposition states that the purchase-money was paid, about fifty dollars or sixty dollars in an account he owed his father, and somewhere near two hundred dollars last of August or first of September, 1886, according to his recollection, before the delivery of the deed, and the residue was paid at Grantsville at the October term of court, 1886.   He states, in explanation of his remaining on the land after he had sold and conveyed, that at the time of the sale he had been solicited to come to Grantsville and run a shoe-shop, but he could find no unoccupied house, and for some time after the sale he expected to locate somewhere else, but could not afford to build a house, and decided to rent of his father until he could see a chance to do better.

The evidence of his wife, defendant Mattie E. Pettit, tends to show payment of part of the purchase-money. She knew that her husband brought home one hundred and eighty dollars, she thinks that was the amount, being part of the purchase-money.   The close relationship of these parties may require close scrutiny of their conduct and testimony ; still I do not see how we can avoid the conclusion that Silas Pettit was a purchaser for value, full value, as all the evidence shows, or that he should have been required to produce the evidence of his wife or of his daughter in the west.

2. Did Silas Pettit, the grantee, have notice of the fraudulent intent of Joseph S. Pettit, his grantor ?   In his answer and in his deposition he denies all notice or knowledge of the fraudulent intent of his grantor, and of all

participation in the fraud, if any was intended. The plaintiff attempts to bring such notice home to him by the testimony of her husband, John R. Blackshire, who states that about the October term, 1886, of the Circuit Court, in the court-house yard, he heard Mr. Wiant ask Silas Pettit if his son Joseph was not worth the money paid by plaintiff for the one hundred and fourteen acre tract of land. Mr. Pettit said that Joseph had fifty acres of land, and that he supposed that it was worth the money that witness had paid on the land, but he hardly thought Joseph would pay it. Silas Pettit says he had a conversation with Mr. Wiant at the time and place about the one hundred and fourteen acres, but denies positively that anything at all was said about the fifty acres. Mr. Wiant in his testimony recollects well having at the time and place a conversation with Silas Pettit about the one hundred and fourteen acre tract but has no recollection of anything being said about the fifty acre tract; besides, the deed to Silas Pettit for the fifty acres was then upon record and the purchase-money paid.

The record does not disclose, so far as I can see, any fact or circumstance within the knowledge of Silas Pettit which ought to have put him on such inquiry as would have led to a knowledge of his son's fraudulent intent. He knew that he wished to move to Grantsville to carry on his trade as a shoemaker. He knew that he owed some debts—he had paid one for him out of the purchase-money of the land, besides his own account; but the debts of his son were few and small, except the debt of plaintiff, and we are not able to tell what condition that was in when he received his deed for the fifty acres. Unsold lands also may have been in the deed of trust. Nor is there any necessary presumption, as against the buyer, that a man somewhat in debt, who sells his only visible property for a fair price, does so with the intent to hinder, delay, or defraud his creditors. Such things are common in the usual course of business.

There is an attempt made on behalf of plaintiff to prove that Joseph S. Pettit and Mattie E., his wife, made certain admissions showing the fraudulent intent of Pettit, the

grantor, in selling and conveying the fifty acres. Three answers can be made to this: *First,* the evidence of defendants sufficiently rebuts this evidence given by George H. Gordon and Virginia, his wife; *second,* these admissions, if made at all, were made a year and more after the sale and conveyance to Silas Pettit; and, *third,* they only tend to prove the fraudulent intent of J. S. Pettit, a thing already taken as proved, and in no wise help to bring home to Silas Pettit notice of such intent.

The chancellor had this question of fact to decide; and whatever suspicion of the fact of notice on the part of Silas Pettit he may have had, if any, he evidently came to the conclusion that the circumstances were not sufficient to prove that Silas Pettit participated in the fraud or had notice of the fraudulent intent of his grantor, but that the evidence on behalf of Silas Pettit met and repelled such presumption. See *Goshorn* v. *Snodgrass,* 17 W. Va. 718, 769. And it being his duty to decide this question of fact, such decision is entitled to some weight in this Court. I do not think the cause ought to have been retained to ascertain and decree the amount of damages, if any, sustained by the plaintiff by reason of the alleged breach of the covenant of general warranty; but the cause ought to have been dismissed, as it was dismissed, but without prejudice.

A case might occur in which it would be proper for the court to retain the cause for such purpose, especially where no trial by jury could be reasonably demanded, being merely the case of so much purchase-money paid to be refunded, or a case in which the pleadings showed no disagreement as to the amount to be refunded. But the question involving such practice has neither been raised nor discussed, nor do we here intend to pass upon it.

The decree complained of, so modified as to be a dismissal without prejudice, must be affirmed.

AFFIRMED.