# CHARLESTON.

## WEBB et al. v. BAILEY et al.

Submitted September 10, 1895—Decided December 4, 1895.

1. TRUST FUNDS—IMPLIED TRUST.

   When trust funds are invested in land by a trustee, and the title is taken in his own name, an implied trust will be raised in favor of the *cestui que trust*. If such funds are paid in pursuance of the contract of purchase, it does not matter whether they were paid before, at the time of, or after the purchase.

2. TRUST FUNDS—WRONGFUL TRUSTEE—IMPLIED TRUST.

   Where a rightful trustee turns over to a wrongful trustee the trust funds, and afterwards, in exchange for such funds, conveys to such wrongful trustee, in his own name, a tract of land, such land will be deemed to be held in lieu of the trust funds for the benefit of the *cestui que trust*.

3. NOTICE OF TRUST—SUBSEQUENT PURCHASERS.

   Notice of a prior existing trust, received by a subsequent purchaser before the payment of all the purchase money, although it be secured and the conveyance executed, is equivalent to notice before the contract of purchase, in so far as the legal title to the trust subject is concerned.

4. ERROR—APPEAL.

   On appeal, error prejudicial to the appellant must affirmatively appear, or the decree will be affirmed.

JOHN J. DAVIS and EDWIN MAXWELL for appellants, cited 35 W. Va. 47, 48; 83 Ind. 266; Perry, Trusts, § 141; White & T. L. Cas. 335; 1 Lomax, s. p. 632; 3 Gratt. 357; 33 W. Va. 573; 26 W. Va. 529; 25 W. Va. 179; 30 Gratt. 745.

JOHN BASSEL for appellees, cited 10 Am. & Eng. Enc. Law, 49, 50, 35, 39, note; 16 Id. 796; Perry, Trusts, § 126;

Lewin, Trusts & Tr. 102; 11 Wall. 217; 96 U. S. 30; 32 W. Va. 259.

DENT, JUDGE:

In the chancery cause of Joseph L. and Minnie Webb, plaintiffs, against John W. Bailey, *et al.*, defendants, the Circuit Court of Harrison county, on the 29th day of September, 1894, entered a decree holding that a certain tract of land, containing four hundred and ten acres, situated in said county, was held in trust by John W. Bailey, William M. Late, and Samuel S. Faris, defendants, for the female plaintiff, and directing conveyance of the same in accordance therewith.

From this decree defendants appeal, and assign the following errors, to wit: "The court erred in overruling the demurrer to the bill by Bailey, because it is not charged in the bill that Bailey paid for the four hundred and ten acres of land, at the time he purchased it, with guardianship funds or money. The court erred in not dismissing the bill on the statute of limitations, because the right to raise a resulting trust is or may be barred by the statute of limitations. The court erred in not dismissing the bill on the evidence, because it does not appear that Bailey paid for the four hundred and ten acres of land with guardianship money at or before the time when he received the deed for the same. The court erred in not dismissing the bill on the evidence, because it does not appear that Bailey paid for the four hundred and ten acres of land with guardianship money. The court erred in not dismissing the bill on the evidence because it distinctly appears from the evidence that at least four thousand dollars of the purchase price of the four hundred and ten acres of land was not paid out of guardianship money in the hands of Bailey. At all events, the court erred in not dismissing the bill, as against your petitioners Late and Faris, because Bailey had continuous and unbroken possession of the four hundred and ten acres of land for more than ten years before they purchased the seventy seven acres, part thereof, without any notice to them, or either of them, that said four hundred and ten acres was held under any secret trust."

Two grounds of demurrer are insisted on:

1. "The bill charges that defendant Bailey bought a tract of four hundred and ten acres of land in his own name, and paid for it with money belonging to his wife in his hands as her guardian. This might be true, and no trust result. It must appear from averments in the bill that the money was paid at or before the time of the purchase to raise a resulting trust." The allegations of the bill are as follows, after first setting out that a certain legacy was left to one Kitty Ross, afterwards Kitty Bailey, by her father, Isaac D. Ross, by will, a copy of which is made part of the bill, and the portion thereof involved in this suit is as follows, to wit: "Out of my notes, bonds, and cash effects, I give to my daughter, Kitty Ross, nine thousand, nine hundred and twenty five dollars, but if the notes, bonds, and cash effects aforesaid should not be sufficient, then the boys, Henry C. Ross and David Q. Ross, shall pay her sufficient to make her equal with themselves, said sum to be invested in government bonds or otherwise until she becomes thirty years of age, at which time if she be unmarried, or if married to a man of sober and steady habits, she shall receive the said funds aforesaid; but if she be married to a man of intemperate and otherwise dissipated habits, then in that event the money set apart as her share shall be kept invested for her use and benefit until the death of her husband, at which time she shall receive the amount aforesaid, but if she dies before her husband leaving a child or children, the money shall be kept invested as before for the use and benefit of her child or children until they arrive at the age of twenty one years, at which time each child shall receive its equal share. She, the said Kitty Ross, shall receive yearly the interest arising from said bonds, and in case of her death the interest shall be paid for the support of her children, if any, during their minority. And my sons, Henry C. Ross and David Q. Ross, I appoint as guardians for my said daughter, Kitty Ross, to manage her moneys as above directed, and though they are guardians proper only during her minority, yet shall they manage her moneys during the time and in the manner above directed." The bill then proceeds. "Com-

plainants further show that said David Q. Ross and Henry C. Ross, in violation of the trust reposed in them by said testator, shortly after such appointment of said Bailey as guardian of said Kitty, paid to him the full amount of said legacy of said Kitty, and on the 24th day of March, 1871, said David Q. sold and conveyed to said John W. Bailey a tract of land lying on the waters of Simpson's creek, in said county, by deed of that date, at the price of ten thousand, two hundred and fifty dollars, which was paid to said David Q. by said John W. with the funds of his ward, said Kitty, and said David Q. retained the money in his hands, perhaps, and said John W. receipted to him, said David Q., for that amount paid him, said Bailey, as such guardian. Plaintiffs further show that, in whichever way it was done, as above stated, the said John W. made the purchase of said land with the funds of his said ward, Kitty, and that, in fact, the said land, though conveyed to him, was her land, and was taken by him as trustee for her, and is liable to be followed in his hands as a trust fund or trust estate." In the case of *Lehman* v. *Lewis*, 62 Ala. 129, it was held : "To constitute a simple resulting trust, where one person's money is used in paying for lands conveyed to another, the money must be paid at the time of the purchase, but when a trustee thus uses trust funds, it is not essential to the *cestui que trust's* equity to charge the lands that the money be paid at the time of the purchase. The right may be enforced whether the payment be made before or after the purchase, so long as the trust funds can be traced into specific property and against all persons except *bona fide* purchasers." And in *Blodgett* v. *Hildreth*, 103 Mass. 484, held: "The mode, time, and form in which the consideration was rendered was immaterial, provided they were in pursuance of the contract of purchase."

Having alleged that the lands were purchased and paid for with the trust funds it was unnecessary to allege that the payment was made at or before the time of purchase, as the mode, time, and form of payment is immaterial, the real gist of the suit not being the time but the purchase and payment in pursuance of the contract, with trust funds. The allegations of the bill on this point are amply sufficient.

2. "The court erred in not dismissing the bill on the statute of limitations." Under the provisions of the will the plaintiff Minnie Webb was not entitled to the trust fund until she became twenty one years of age, and neither *laches* nor lapse of time could be imputed to her, nor would any statute of limitations begin to run as to her until her right to demand the fund accrued. Prior to this time the only persons having the right to pursue this fund were the rightful trustees thereof, Henry C. Ross and David Q. Ross, or the survivor of them. The funds involved were willed to Kitty Bailey on the happening of certain contingencies, which never happened, and therefore they never became her funds. These contingencies failing, the money was to be Minnie Webb's, but not until she should become twenty one years old, and not until then could she maintain her suit for their recovery, for no such contingency might ever happen. Promptly after she became twenty one years of age, and the right of action accrued to her, she brought this suit. This is not a legal demand, as in the case of *Wilsons* v. *Harper*, 25 W. Va. 179, but it is purely equitable, and the statute of limitations has no application, but it must be determined according to rules and principles governing courts of equity. *Cranmer* v. *McSwords*, 24 W. Va. 595. Conscience, good faith, and reasonable diligence, under the circumstanaes, is all that a court of equity requires. All these are in favor of the female plaintiff, and she is neither barred of her claim by the lapse of time, nor can *laches* be imputed to her. The demurrer to the bill was properly overruled.

The defendants further insist that the evidence does not clearly establish the purchase of the lands in controversy with trust funds. In the case of *Robinson* v. *Robinson*, 22 Iowa, 427, it was held: "Where it clearly appears that a guardian received money belonging to his wards, and delivered the same over to the father, who invested it for their benefit in certain lands, taking the title in his own name, the father will be treated as holding the same in trust for said wards." In *Sandford* v. *Weeden*, 2 Heisk. 71, held: "The proof to raise a resulting trust must be such as to fully satisfy the court of the facts upon which the result depends." And in *Snell* v. *Elam*, *Id.* 82, held: "The rule

which requires strictness of proof to establish a trust may
be relaxed in a case of parties who do not deal upon equal
terms, as in a case between guardian and ward, where the
guardian has kept no accounts, a trust will more readily be
presumed." In this present case the trust is clearly estab-
lished by the presumptions of law bearing on the facts and
circumstances proven. The defendant Bailey received the
trust fund and in a few days purchased the land with it.
He was not legally entitled to the fund, but it was turned
over to him by its true custodians, and then, from one of
them, he purchased the land in controversy with it, so that
the fund itself returned into the hands of the rightful trus-
tee, while the wrongful one received in lieu thereof the
land in controversy. So that, in truth and in fact, it might
as well be regarded as one transaction, and that is that the
land was turned over to the wrongful trustee in satisfaction
of the legacy. The whole affair was illegal from beginning
to end, but while this is the case the land represents the
trust fund. This is clearly established by the evidence of
the surviving rightful trustee, and the admissions, both ex-
press and implied, of the wrongful trustee, none of which
are more potent than his failure to testify in his own be-
half or keep or render any account of his dealings with
this trust fund. If he did not purchase this land entirely
with the trust fund, it was in his power, and the duty de-
volved upon him to show just what he did do. Failure to
do so must be held to be a strong admission against him-
self, and to raise the presumption that his testimony, if
given, would be in support of plaintiffs' claim. *Trust Co.* v.
*McClellan*, 40 W. Va. 405 (21 S. E. 1025). The testimony
of his father, Benjamin Bailey, in the light of the circum-
stances surrounding the transaction, is insufficient to raise a
reasonable doubt about the true disposition of the trust fund.

The most serious question is whether the defendants
Late and Faris can be regarded as *bona fide* purchasers for
value without notice, to the extent of the purchase money
paid by them on their purchase prior to the institution of
this suit. They purchased, in November, 1890, seventy
seven acres, three roods, and seventeen square poles of the
land in controversy, and paid in cash one thousand and

forty nine dollars and eighty one cents, leaving unpaid a balance of eight hundred and ninety six dollars and fifty nine cents, for which they executed their obligations, payable in one, two, and three years. The answers admit that this balance was unpaid at the time they were filed. None of it was due at the time summons was served in this suit. In the case of *Currence* v. *Ward**\* (decided at this term) it was held: "An innocent purchaser for value must both have paid the purchase money in full and received conveyance of the legal title before he can plead the want of notice as a complete bar to a prior equitable title. A suit instituted before either or both these conditions is notice sufficient and in time." That is to say, notice before payment of the purchase money in full gives the *cestui que trust* holding the prior equity the right to take the property, for all the purchaser loses thereby is a good bargain, if he has made one. But, as to the purchase price in so far as paid before notice, the rule prevails that the purchaser, to that extent having acted in good faith, is entitled to be reimbursed from the rightful owner as a condition to granting him a restoration of the property. This is on the principle that he who asks equity must do equity. "Notice before actual payment of all the money, although it be secured, and the conveyance actually executed, or before the execution of the conveyance, notwithstanding that the money be paid, is equivalent to notice before the contract, and is sufficient to charge lands in the hands of a purchaser with all the claims legal and equitable which third parties may have upon it." Purchasers having no notice of any fraud when they take their deed and pay their first installment of the purchase money may be protected as to the amount paid by them on the land. But they can not claim to be innocent purchasers until they have made the purchase, received the deed, and paid the whole of the purchase money. *Rhodes* v. *Green*, 36 Ind. 10; *Burton* v. *Reagan*, 75 Ind. 81; *Heck* v. *Fink*, 85 Ind. 9; *Anderson* v. *Hubble*, 93 Ind. 579.

In *Lewis* v. *Phillips*, 17 Ind. 108, it was said, by the judge delivering the opinion : "There are few, if any, cases holding that the payment of part of the purchase money before

\*Motion to rehear pending.

notice, although the purchaser has taken a conveyance, is sufficient to enable him to hold the land as against him who has the prior equitable right. But while this is the case, there is an evident tendency in the decision to afford the purchaser relief and indemnity, in a proper case, by giving him a lien upon the land, or, rather, by permitting him to make use of his legal title to secure himself for the purchase money paid before notice, and for improvements made on the land." To secure such a lien or indemnity, the person entitled to it must set it up and claim it in his answer; otherwise, the court can not give him such relief. To get it he must ask for it. This the defendants have not done, but claim that part payment of the purchase money and conveyance of the legal title give them the indefeasible right to hold the land. Such, as we have seen, is not the law. Hence, without going into the evidence touching the question of notice, the decree is justified by the pleadings and the law. *Lewis* v. *Phillips, supra; Harrison* v. *Brewster,* 38 W. Va. 294 (18 S. E. 568); *Middleton* v. *Selby,* 19 W. Va. 168. With regard to notice, defendants Late and Faris testify that they had no knowledge from any source of the existence of the trust, and contradict various witnesses as to statements by them, which, if true, showed they had complete notice, and were fully aware of the trust and its nature at the time of their purchase. Here is an irreconcilable conflict of evidence. If defendants Late and Faris are to be believed, they knew nothing of the trust; but if the numerous witnesses introduced by the plaintiff, including her own testimony, are to be believed, they not only had sufficient knowledge to put them on inquiry but knew all about the trust. In numbers the weight is decidedly with the plaintiff. As to credibility the court can not decide between them.

According to the repeated decisions of this Court the affirmative is with the appellants to show error in the decree of which they complain to their prejudice. Failing in this the decree must stand. When the testimony leaves the case in doubt, so as to make it a mere matter of guess or conjecture, this Court will not reverse.

The decree is therefore affirmed.