# CHARLESTON.

JAMES WELCH v. W. S. KING and G. E. DOUGLAS.

Submitted April 9, 1918.    Decided April 16, 1918.

1. TRIAL—*Instruction—Evidence.*

To warrant the giving of an instruction, evidence must have been adduced, tending to prove facts sustaining the hypothesis it states.  (p. 263).

2. SALES—*Sale on Credit—Instruction—Evidence.*

Evidence tending to prove a contract of sale of personal property, in which payment of the purchase money, in cash, is stipulated for, as a condition precedent to the transfer of title, or a mere option to purchase, does not justify the giving of an instruction propounding the law of a sale on credit, passing title to the purchaser.  (p. 263).

3. SAME—*Payment—Fraud—Evidence.*

Such a contract having been proved in a case in which there is an issue as to whether the person making it and delivering possession of the property was an agent of the owner, or a mortgagor in possession, with authority to sell the property for cash, the vendee having no knowledge of his lack of ·clear title, evidence casting doubt upon· the character of the title as between the alleged principal and agent or mortgagor and mortgagee, has no tendency to prove perpetration of a fraud upon the alleged vendee, he ·having failed to comply with the condition of the contract of sale, if-any, or to exercise his option, if any, and an instruction propounding the law of fraud cannot properly be based thereon.  (p. 264).

4. TRIAL—*Documentary Evidence—Consideration.*

When documentary evidence admissible for some purposes and inadmissible for others, has been introduced, the court, if requested so to do, should limit consideration thereof, by instructions or otherwise, to proper purposes, or direct disregard thereof as to purposes for which it is not admissible.  (p. 265).

5. SALES—*Bona Fide Purchaser—Notice.*

A purchaser of property giving, as consideration therefor, only his negotiable notes, and having notice of lack of title in his vendor, before the notes are paid or disposed of by the vendor to an innocent party, is not a complete purchaser and, therefore, not one for value and without notice, within the meaning of the recording statutes.  (p. 265).

Error to Circuit Court, Roane County.

Action of detinue by James Welch against W. S. King and others.   Judgment for defendants, and plaintiff brings error.

*Reversed and remanded.*

*Cunningham & Marford,* for plaintiff in error.

*Ryan & Boggess,* for defendant in error.

POFFENBARGER, PRESIDENT:

Review of this verdict and judgment for the defendant, in an action of detinue for the recovery of the possession of an automobile, involves consideration and application of certain principles of the law of title to personal property, agency, sale, *bona fide* purchaser and trial practice.

Both the plaintiff and W. S. King, one of the defendants, claim title to the automobile by direct and separate purchases from O. D. Strader, the former by a contract made at Parkersburg, West Virginia, August 4, 1916, and the latter by a contract made at Spencer, West Virginia, August 11, 1916. Douglas claims it by an alleged purchase from King, made August 14, 1916. Although the plaintiff's claim of title is evidenced by a formal written instrument sealed and acknowledged, certain facts and circumstances are relied upon as casting doubt upon the character and validity thereof. The written contract purports to have been one of absolute and unconditional sale, but a suggestion of the existence of the relation of mortgagor and mortgagee between the plaintiff and Strader is predicated upon the fact that the sum of money paid for the two cars constituting the subject matter of the contract was less than what they cost, by about $150.00, and certain conduct of the parties indicative of ownership in Strader after the date of the contract. According to the testimony of the parties to the contract and two other witnesses, their attorney and his stenographer, their mutual understanding and the contract entered into by them conformed strictly to the written memorial thereof. After the payment of the purchase money and execution of the bill of sale, the vendor, Strader, unloaded the cars which were then in the possession of the Baltimore and Ohio Railroad Co., under a

consignment to Strader, and drove them to a garage selected by the purchaser. At and before the consummation of the purchase, the employment of Strader as the plaintiff's agent to sell the cars had been under discussion, and, on the next day, it was agreed upon. Within a short time thereafter, Strader sold one of the cars to some person residing near West Union, for $600.00 in cash, and paid the money to the plaintiff and was allowed out of the same, $43.00 for his services and expenses, but whether this transaction occurred before or after the car involved in this controversy was taken to Spencer, is left in doubt by the evidence. The relation in time between the two transactions, however, is not important. On Monday following the date of the contract of sale, Strader drove the car here involved from Parkersburg to Spencer at which place he and King endeavored for three or four days to sell it to different persons. Failing in that, he left it with King, returned to Parkersburg and reported the result of his trip to the plaintiff.

Strader was an agent at Parkersburg, handling the Empire Automobile Company's cars and distributing them in that city and other sections of this state, but he had been unsuccessful and was in failing circumstances. About August 1, 1916, the two cars referred to arrived in Parkersburg under a consignment to him, at the price of $1,668.00, and, as a condition precedent to their delivery to him, he had to pay a sight draft accompanying the bill of lading. Failure to do that and take the cars, would have inflicted upon him the loss of his agency and about $100.00 he had deposited with the company. Not having the money, he applied to R. E. Bills, an attorney, for assistance in the procurement of a loan or some arrangement by which he could obtain the money. After futile efforts to borrow it, Bills induced the plaintiff, one of his clients, to purchase the cars outright at the price of $1,550.00, which was $400.00 or $500.00 less than the price for which they were usually sold. The original proposition was for a joint purchase by Bills and Welch, the former contributing $500.00 and the latter $1,050.00, and the bill of sale was originally drawn in their favor. After having gone over his bank account and found that he did not have as

much as $500.00 to spare, Bills proposed to Welch that he furnish the entire amount of money and take the title himself, assuring him that the investment was perfectly safe, and this proposition was accepted and the bill of sale altered.

Except as to the amount of money paid and the alleged sale price, Strader and King do not materially differ in their testimony concerning the transaction between them. Although the latter says he purchased the car, the facts related by him clearly show the contrary. His claim of purchase is a mere conclusion of law not warranted by the facts. He admits that he and Strader together made numerous unavailing efforts to sell the car to other parties. After failure thereof, Strader left the car with him, not as a purchaser, but as an agent, or possibly, as an optionee having right of purchase. Strader admits he paid him $50.00, which he turned over to Welch, but King claims he paid him $100.00. Strader says King was to sell the car for cash, agreeably to the terms of his, Strader's, authority, and bring him the money or the car not later than the following Saturday. King says he was either to return the car and forfeit $25.00 of the money he claims to have paid, or sell it and pay Strader $800.00 out of the proceeds of the sale. He claims the price agreed upon between him and Strader was $900.00, while Strader claims it was $950.00. According to the testimony of the former, the car should have been returned or $900.00 brought to Parkersburg in lieu thereof by Saturday. As substantially admitted by the latter, either the car or $800.00 was to be brought to Parkersburg on or before that day. Though King says he never told Strader he would take the money to him, he unequivocally admits this obligation was a part of the proposition submitted to him by Strader and accepted. He and Strader had had former dealings and transactions in cars which had resulted in an indebtedness of Strader to him, of several hundred dollars, possibly more than the value of the car in question. He sold the car to Douglas August 14, 1916, at the price of $900.00, taking three notes for the purchase money, one for $500.00 and two for $200.00 each, payable to himself in six, nine and twelve months from date. On the trial, he produced all of these notes, had evidently collected

nothing on any of them and claimed right to set off Strader's indebtedness to him, against the price of the car named in the alleged contract of sale thereof to him.

King was not fully advised as to the state of the title to the car, at the time it was left with him, and he may have had reason to believe it belonged to Strader. He says he had no knowledge whatever of Welch's title nor of Strader's lack of title. Strader says he told him the car did not belong to him, but that he does not know that he told him it belonged to Welch or Bills. A letter from him to King, dated August 14, 1916, at Parkersburg, and mailed on the next day, contains an admission that he had not fully explained the state of the titles of the two cars sold to Welch. In that letter, he says they were in Bills who was to hold them until the money advanced by him should be paid. The naming of Bills as the holder of the title was an inaccuracy due no doubt to the fact that Bills had been the active man in the procurement of the money, if the contract was made, August 4, 1916, as it purports to have been. A suggestion that it was prepared and signed after this controversy arose, and for the purpose of this litigation, stands upon nothing more than Strader's possession of the car, his purpose to make sale of it and evidence of his having taken its number on the occasion of one of his visits to Spencer after the sale to Douglas. His letter of August 14, 1916, written before the date on which it is claimed he took the car number, said Bills had the number and could identify the property.

As stated and defined by himself and his principal, Bills and Cooley, Strader's authority as agent was limited to sales for cash. Although King denies knowledge of the agency and lack of title in Strader, he admits the car was left with him to be sold for cash. One of the defenses is that Strader, if agent and not owner, made a sale on time to King, without authority, but that Welch, his principal, accepted the cash payment, acquiesced in the unauthorized terms of the sale and thereby ratified the unauthorized act. Strader denies having made any sale to him at all. His testimony is that he left the car with King for sale and took from him a deposit of $50.00 to be applied on the price of the car, in settlement, in case of

the sale thereof for cash, at the price of $950.00, and to be forfeited on the return of the car, in the event of failure to sell it. This is the transaction reported to his principal, Welch. Both he and Welch deny any intimation to the latter of a sale on time. Except as to the amount of the payment and forfeiture, these are the terms also upon which King says the car was left with him, and his acceptance of it upon such terms and conditions obviously amounted to an acceptance of the terms or his agreement thereto. If, therefore, he is correct in the statement that he never told Strader he would take the money to him, the fact is immaterial. His silence gave consent. If he did not qualify his acceptance, it was an agreement to the terms of the offer. He does not say he dissented or gave any notice of intention not to deliver the money or the car. Moreover he expressly says it was his understanding that if he did not sell the car and returned it, he was to forfeit part of the money he had paid. Again, he says he was to loose $25.00, if he returned the car and did not, "come over with the balance of the money— the eight hundred dollars."

This evidence touching the conditions upon which the car was left with King and the plaintiff's knowledge thereof, together with the retention of the $50.00 received by the plaintiff until the date of the trial, at which time it, with interest thereon, was tendered to King in open court, did not justify the giving of defendant's instructions Nos. 5 and 7, submitting to the jury the hypothesis of a sale to King on time, without authority, and ratification thereof by the plaintiff. They proceed upon the hypothesis of title in Welch and agency in Strader. If the latter exceeded his authority at all, the unauthorized act was not a grant of time for payment, for according to the admitted terms of the alleged sale, the title would not have passed to King, otherwise than on payment of the balance of purchase money, whether $800.00 or $900.00. If a sale at all, it was a sale upon condition of payment of the whole amount of purchase money, in cash, and King has never complied with that condition. If the contract was not one of conditional sale, it may have been a mere option to buy, which King intended to exercise, in the event of his

ability to sell the car to some other person, and the payment he made may have been the consideration of the option. Whatever the legal character of the transaction may have been, it was not a contract of sale on time, passing title. Delivery of the possession of personal property does not always pass the title, even in contracts of sale. The time and condition of the transfer of title depend upon the intention of the parties, and, if payment of the purchase money is stipulated for as a condition precedent to the passing thereof, it does not vest in the purchaser until he complies with the condition. *Buskirk Bros.* v. *Peck*, 57 W. Va. 360; *Barrett* v. *Prichard*, 2 Pick. (Mass.) 512; *Meeker* v. *Johnson*, 3 Wash. 247; *Ayer* v. *Bartlett*, 9 Pick. (Mass.) 156; *Reed* v. *Upton*, 10 Pick. (Mass.) 522; *Banendall* v. *Horr*, 7 Blatchf. 548; *Hammett* v. *Linneman*, 48 N. Y. 399; *Dows* v. *Kidder*, 84 N. Y. 121; *Adams* v. *O'Connor*, 100 Mass. 515; *Elevator Co.* v. *Bank*, 23 O. St. 311; *Ferguson* v. *Clifford*, 37 N. H. 86; Benjamin, Sales 299; Mechem, Sales, sec. 544. These two instructions were improperly given because there was an utter lack of evidence to prove or establish the hypothesis they submitted. *Kuykendall* v. *Fisher*, 61 W. Va. 87; *Parker* v. *Building & Loan Association*, 55 W. Va. 134.

Two other instructions given at the instance of the defendants, Nos. 2 and 8, were inappropriate and inapplicable for the same reason. The former propounded to the jury the badge of fraud doctrine of the law of fraudulent conveyancs, and it was predicated upon the formality of the contract of sale between Strader and Welch. The defendants had no interest or right in the subject matter thereof. They were neither owners of the property nor creditors of Strader to such an extent or in such sense as to confer upon them any right respecting the subject matter. Strader himself was not then the owner of the car. Title could pass to him only by payment of the purchase money. Before it was paid, he assigned such right as he had to Welch, by an absolute contract of sale. That contract was given a greater degree of formality than was necessary, but the form with which the parties clothed it was neither illegal nor immoral. The motive or purpose, whatever it may have been, did not in any

way concern or affect any interest of the defendants nor any other person. It antedated the transaction in which the defendants became interested and was wholly unconnected therewith. Hence, it is not evidence of any fraudulent purpose or intent respecting those transactions or either of the defendants. Instruction No. 8 advised the jury of the propriety and necessity of resort to circumstantial evidence, for proof of fraud, and of the rule that it need not be proven beyond a reasonable doubt, as a ground of action or defense. Nothing in the conduct of either the plaintiff or Strader tended to prove any fraudulent intent or purpose. If there was a contract of sale, it was made upon a condition with which the defendant King did not comply, and, if he had fulfilled his contract, he could not have been hurt by anything done by his alleged vendors.

There is no evidence of the perpetration of fraud upon Douglas. He can loose nothing but the benefit of his contract. He cannot be regarded as a *bona fide* purchaser for value without notice, because his purchase was not complete. He paid no purchase money and, long before the notes he executed for it became due, he had notice of Welch's title. Although they were negotiable, it does not appear that King ever disposed of them, or that anything has been paid on them. If there was any purpose or intention on his part to negotiate them, under such circumstances as would have inflicted loss or injury upon Douglas, a court of equity would have readily granted the latter a remedy for prevention thereof, after his discovery of King's lack of title. He was not a complete purchaser. *Plow Co.* v. *Blackburn,* 74 Neb. 246; *Greenlee* v. *Marquis,* 49 Mo. App. 290; *Wetmore* v. *Woods,* 62 Mo. App. 265; 35 Cyc. 352.

Plaintiff's prayer for his instruction No. 5, which, if given, would have told the jury Strader's letter to King, affirming title to the car to be in Bills, could not be regarded as showing ownership in Bills, or as affecting Welch's title, if they believed the latter had become the owner of the car, by the contract of August 4, unless they should believe he had had knowledge of said statement and acquiesced in it, was improperly refused. A declaration of title in any other person

than his principal was not within Strader's authority as agent. If Welch was owner, Strader must necessarily have been agent for some purpose, for he had rightful possession of the car. There is no evidence of any authority in him to disavow his principal's title. All of the testimony on the subject is against it. Having admitted the letter, the court should have given instructions limiting its effect to proper purposes, upon requests therefor.

For the errors noted, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded.*