CHARLES B. ALEXANDER

*v.*

SARAH R. ANDREWS, *et al.*

(No. 10289)

Submitted January 16, 1951.    Decided February 20, 1951.

404

*Goodwin, Nesbitt, Spillers & Mead,* for appellant.

*Hall, Paul & Phillips,* and *David B. Holden,* for appellees.

Fox, PRESIDENT:

This is a suit in equity instituted in the Circuit Court of Ohio County in which the plaintiff seeks to have quieted his alleged title to two certain lots of land, situated in the City of Wheeling, purportedly conveyed to him by Thomas A. Alexander on May 14, 1946, and to remove, as a cloud upon his title, a deed for the same property, executed by the said Thomas A. Alexander to Sarah R. Alexander, now Andrews, dated May 8, 1946, but not recorded until July 8, 1946. The plaintiff claims this relief by reason of the allegations contained in his bill that he purchased the said real estate for valuable consideration and without notice of the deed to Sarah R. Andrews. The defendants filed an answer and cross-bill, and upon a hearing of the case a decree was entered on October 21, 1949, dismissing plaintiff's bill, and granting to the defendant, Sarah R. Andrews, the relief prayed for in her cross-bill. At the instance of the plaintiff below, we granted this appeal on May 29, 1950.

In order to fully present the questions involved on this appeal, it is necessary to make the following statement: On June 6, 1939, Katherine B. Alexander, a sister of both the plaintiff and defendant, Sarah R. Andrews, purchased the real estate involved herein. She died intestate and without issue on June 9, 1945, and her estate passed by inheritance to her father and mother, Thomas A. Alexander and Mary J. Alexander. Mary J. Alexander died testate on April 25, 1946, and devised her interest in said

real estate to the plaintiff, Charles B. Alexander. On May 8, 1946, Thomas A. Alexander executed, acknowledged and presumably delivered to Sarah R. Andrews, who was his daughter, a deed for his interest in the real estate, but said deed was not recorded until July 8, 1946. On May 14, 1946, the same Thomas A. Alexander executed, acknowledged and delivered to the plaintiff, Charles B. Alexander, a deed for his interest in the real estate which he had theretofore conveyed to Sarah R. Andrews, and this second deed was recorded on the same day. The real estate involved has been occupied by Charles B. Alexander, and since the date of his deed his father, Thomas A. Alexander, lived therein until his death in October, 1948.

This suit was instituted in January, 1949, and the bill was filed at the February Rules following. In said bill the facts hereinbefore stated are alleged, and the plaintiff also alleged that on May 14, 1946, when he obtained his deed for said lots, he was without knowledge of the existence of the deed of May 8, 1946, and knew nothing thereof until about January, 1949, when he received a tax notice on which the name of Sarah R. Andrews appeared, whereupon he made inquiry and learned the true situation. He alleges in his bill, and insists in his testimony, that this was his first intimation that his father had executed a deed for the property which he had conveyed to him on May 14, 1946. On May 5, 1949, Sarah R. Andrews and Frank Andrews, her husband, filed their answer to the plaintiff's bill, in which they deny or call for full proof of the pertinent allegations of the plaintiff's bill; they especially deny that the plaintiff was a bona-fide purchaser for value without notice of the conveyance to Sarah R. Andrews; and then by way of cross-bill set up the conveyance of the said property to Sarah R. Andrews, by deed dated May 8, 1946, and further alleged on information and belief that Thomas A. Alexander, on May 14, 1946, "while under great persuasion, pressure and influence, brought about by the said complainant, Charles B. Alexander, did execute a deed purporting to convey his interest to the said Charles B.

Alexander, at a time when both the said Thomas A. Alexander and the said Charles B. Alexander well knew that the said Thomas A. Alexander had no interest in the said property, the said Thomas A. Alexander having theretofore conveyed all his interest to complainant, Sarah R. Andrews, as aforesaid." The said cross-bill then denies that the plaintiff was a bona-fide purchaser of said property for a valuable consideration and without notice of the deed of May 8, 1946, and avers that the deed from Thomas A. Alexander to Charles B. Alexander constitutes a cloud upon the title of Sarah R. Andrews to said real estate. The prayer of the cross-bill is that the deed of May 14, 1946, to the plaintiff, be set aside and be declared void as a cloud upon the title of Sarah R. Andrews, and that appropriate orders be entered to effect that purpose. In said answer there is an allegation, upon information and belief, that Katherine B. Alexander had by will devised the property here involved to the defendant Sarah R. Andrews, but this allegation is denied by special reply, and no proof was offered in support of the allegation. There was a general replication to the answer, and a special reply to the cross-bill. A hearing in open court was had on the matters involved, beginning October 4, 1949, following which the court, on October 21, 1949, found as follows:

"* * *

"(4) That at the time he received the said purported conveyance of May 14, 1946, the complainant, Charles B. Alexander, had actual knowledge of the fact of the prior conveyance of the same property by the said Thomas A. Alexander to the respondent, Sarah R. Andrews (formerly Sarah R. Alexander), on May 8, 1946;

"(5) That the complainant herein, Charles B. Alexander, did not pay to the said Thomas A. Alexander a valuable consideration for the purported conveyance of the said one-half undivided interest in the said property attempted by the deed dated May 14, 1946, as aforesaid."

The court then denied plaintiff the relief prayed for in his bill, and granted to Sarah R. Andrews the relief prayed

for in her cross-bill, and decreed that the purported deed from Thomas A. Alexander to Charles B. Alexander, dated May 14, 1946, be set aside and declared void as a cloud upon the title of Sarah R. Andrews to said property, and that proper notation be placed upon the records in the office of the Clerk of the County Court of Ohio County, to the effect that the said deed had been declared null and void, and that the decree entered be recorded in said clerk's office.

It is well to state at this time that the validity of the deed from Thomas A. Alexander to Sarah R. Andrews, dated May 8, 1946, as of the date of its execution, is not questioned. It follows, therefore, that if the said deed had been recorded prior to the 14th day of May, 1946, when the plaintiff obtained a deed for the same property, plaintiff would have taken nothing by his deed. When Thomas A. Alexander executed the deed of May 8, 1946, he parted with all of his right title and interest in the property conveyed, and thereafter had no interest therein which he could convey. But our recording Act, Code, 40-1-9, makes a perfectly valid and effective conveyance void as to creditors and subsequent purchasers for valuable consideration without notice, until such deed is duly admitted to record in the county wherein the property conveyed is situated; and, therefore, while the grantor has nothing to convey, when he executes a subsequent deed for the same property, to a different party, then by force of this statute, his grantee in the subsequent deed gets title to the land in cases where the grantee in the first deed fails to record his deed before the second deed is executed, and where the grantee in the second deed can qualify as a purchaser for value and without notice of the first deed. Probably the explanation for this illogical result is that the first purchaser, who fails to record his deed, is charged with fault in a situation where one of two persons must suffer loss, in which situation it seems just, and our statute, in effect, provides that the loss must fall upon the person who has committed a fault in failing to record his deed, and by his

fault has created a situation where a subsequent innocent purchaser is induced to part with his money and thereby suffer a loss which the grantee in the first deed could have prevented. *Norfolk & W. R. Co.* v. *Perdue,* 40 W. Va. 442, 21 S. E. 755; *Shipper* v. *Downey,* 119 W. Va. 591, 197 S. E. 355. Aside from the statute, a bona-fide purchaser for value and without notice is a favorite with a court of equity. 9 Va. & W. Va. Digest 936.

Code, 40-1-9, reads:

"Every such contract, every deed conveying any such estate or term, and every deed of gift, or trust deed or mortgage, conveying real estate or goods and chattels, shall be void as to creditors, and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record in the county wherein the property embraced in such contract, deed, trust deed or mortgage may be."

It is clear that if the plaintiff in this case purchased the real estate here involved, without notice of the execution of the prior deed, and paid in full a valuable consideration for his deed, he is entitled under the statute to the relief prayed for; but he must meet the conditions which give him the right to such relief. The first and most important condition is that at the time he accepts his conveyance and becomes a complete purchaser he has had no notice, actual or constructive, of the existence of a former deed to another person for the same property. In this case, if the former deed had been recorded prior to the May 14, 1946 deed, the question of actual notice would not be involved, because the recordation furnished what is termed constructive notice thereof. In this case, however, admittedly the deed of May 8, 1946, to Sarah R. Andrews, had not been recorded at the time plaintiff took his deed on May 14, 1946. On that point of the case the only question involved is whether plaintiff had actual notice of the existence of such deed, or notice of matters and things which called upon him to make inquiry before becoming the purchaser of the property involved.

The other necessary conditions are that he must pay a valuable consideration; the transaction upon which the second purchaser relies must be bonafide; must have been completed; and the entire purchase price paid. The burden of proof of showing the conditions stated above seems to rest on the person who seeks to take advantage of the statute. There is little authority on this subject, but apparently the burden of showing that the transaction was complete, and that valuable consideration was paid, must, of necessity, rest on the person who seeks for himself the benefit of the provision of the statute. There is more doubt as to the burden of proof on the question of notice. However, in the case of *Blackshire* v. *Pettit,* 35 W. Va. 547, 14 S. E. 133, it is held:

> "When the plaintiff has shown that the conveyance was made by the grantor with intent to delay, hinder or defraud creditors, then the grantee must meet this by showing that he was a purchaser for value, and without notice of the fraudulent intent of his grantor; and the recital in the deed of the payment of the purchase-money is not sufficient."

This was a case involving a fraudulent conveyance, but we apprehend that the same general rule would apply in a case of the character now before us. Notice or lack of notice of some act or event is different from a situation requiring affirmative proof. Whether a person has or has not had notice of a prior event involves a mental process, and it is difficult to understand how it can be proved that a person had or had not direct notice of a particular event unless the person charged with notice has made statements to others touching such notice. In the absence of facts and circumstances, or statements of the parties, there can be no way of determining whether he has or has not had notice; and on the question of burden of proof, it seems to us that once a person, who it is claimed has had notice, denies the same, then the burden of proof shifts and the person who asserts that notice has been had must establish the facts and circumstances which clearly indicate notice,

which, of course, under the statute, would in a case such as is now before us, prevent him from receiving the benefits of the statute quoted above. "The burden of proving notice to a purchaser for value is upon him who alleges it." 9 Va. & W. Va. Digest 951, and cases there cited.

As stated above, there is no attack upon the deed to Sarah R. Andrews, dated May 8, 1946, as to its validity at the time it was executed and acknowledged. The consideration for that deed was stated therein to be love and affection. If the legal effect of that deed is to be avoided in this suit, it can only be done under the statutory provision quoted above, and the conditions under which that statute can be made effective must be met. There is likewise no serious attack upon the validity of the deed to the plaintiff, dated May 14, 1946, for the same property. The circumstances under which this deed was executed may have some bearing upon our decision, and will be here stated. Obviously there must have been some discussion of the matter of the execution of this deed between Charles B. Alexander and his father, Thomas A. Alexander, although the record does not so disclose such discussion in detail, and for obvious reasons could not be developed under the rule which prevented Charles B. Alexander from testifying concerning a transaction between his father and himself. (Code, 57-3-1.) Charles B. Alexander had been "keeping company" with a young lady by the name of Hazel Horner for some twenty years. According to her testimony she was his fiancee. She was and had been employed in the law office of William C. Piper as a stenographer for a long period of time, and testified that she was capable of preparing simple deeds. This being the situation, on May 14, 1946, Thomas A. Alexander called Hazel Horner to his home and asked her to have a deed prepared, conveying to Charles B. Alexander his interest in the property here involved. Piper being absent from his office, Hazel Horner, having been furnished the necessary description of the property to be conveyed, prepared such deed. A blue wrapper was placed on the deed which contained Piper's professional card, but for some reason

this was obliterated by someone not known. Hazel Horner delivered the unexecuted paper to Thomas A. Alexander, and there her connection with the same ended. On the same day, Thomas A. Alexander took the deed form to Saul N. Rosenburg, a notary public, who lived near the residence of Alexander. The record shows that these two men were close friends. Rosenburg testifies that on May 14, 1946, he was present at the signing of and certified the acknowledgement to a deed conveying Alexander's interest in the property here involved to Charles B. Alexander. His statement as to what occurred on that occasion is well worth quotation, and is, we think, of some importance in the decision of this case. That statement follows: "I said, 'Tom'—I said, 'Tommie, do you know what you are doing here?' and he said, 'Yes.' I said, 'You know you are deeding your property away.' Tom and I were very friendly. 'Well,' he said, 'it is up to Chuck to bury me. He is taking care of me.' " He also testifies that Thomas A. Alexander was what he termed "in good mind", and also that when asked whether Alexander made any statement concerning his feelings towards his daughters, particularly Sarah, answered: "Well, any more than the time he signed that deed, and I questioned whether it was a wise thing to do, and he told me the girls walked out on him and it was up to Chuck to bury him." He didn't mention any names. The witness later testified: "He told me he had some money in the bank in a joint account at the time he said the girls walked out on him. He said that money was withdrawn and it was up to Chuck to bury him." The deed acknowledged by Rosenburg was recorded on the same day, which, of course, indicates prompt delivery by the grantor to the grantee. In connection with the acknowledgment of this deed, Rosenburg says it was acknowledged in his office. This statement is contradicted by Loretta Green who testified that the deed of May 14 was acknowledged in the dining room of Alexander's home. The record indicates that Mrs. Green was mistaken, and that the paper acknowledged in the dining room was a different paper, and acknowledged at an earlier date. Rosenburg

states that at the time of the acknowledgment of the May 14 deed, no one was present other than Alexander and himself. Being called on as a rebuttal witness, Mr. Rosenburg said that the paper which he acknowledged or witnessed in the dining room was the will of Thomas A. Alexander, bearing date April 10, 1946. Under all the circumstances, it seems quite clear that the May 14, 1946, deed was signed and acknowledged in the office of Rosenburg, and that at the time Alexander was warned against executing the deed, was in full possession of his faculties, and was determined to convey the property to his son Charles B. Alexander. At that time he said nothing about his former conveyance. The record, taken as a whole, does not explain the conduct of this old man in executing, within six days of each other, two deeds for the same property to different people. The will of Thomas A. Alexander, which devised and bequeathed his estate to the plaintiff, Charles B. Alexander, was not offered for probate for the reason that he had no property at the date of his death.

On the question of notice, we do not think the record shows that Charles B. Alexander had notice of the deed of May 8, 1946, at the time he accepted delivery of his deed for the property here involved; nor do we think it shows that he was acquainted with any fact or circumstance which would have required him to make inquiry or investigation as to the state of title before accepting his deed. All of the cases bearing upon the subject of notice hold that a showing of notice is made where a person is charged with facts and circumstances which require him to make inquiry as to matters of which notice or lack of notice is required. We find nothing in this record that goes that far. If he had received any indication of the existence of this former deed, and had searched the records, he would not have found any deed recorded. How far he would have been required to go on line of inquiry, we do not know. We think the court erred in holding that the plaintiff had actual notice of the execution of the deed of May 8, 1946, at the time he obtained his deed for the same property.

But even if the plaintiff is held to be a purchaser with-

out notice of the existence of the former deed, he must, to be entitled to the benefit of the statute, be a purchaser for value or, in other words, must have paid a valuable consideration for his deed. This presents some difficulty. It is contended that plaintiff paid $1,000.00 in cash for this conveyance and assumed certain obligations. There was introduced in evidence a receipt, admittedly in the handwriting of Thomas A. Alexander. This receipt reads:

"May 1946
Recived from C. B. Alexandre $1000.00 Cash intrest for whitch i will execute a deed to him for my right title intrest in the property known as 21 Noth front St Wheeling W V A

TomaS Alexandre"

Some question is raised as to whether or not this $1,000.00 was actually paid. It is testified by two or more witnesses that Thomas A. Alexander denied having received such sum from the plaintiff, but the said receipt stands as an admission on his part that he had received that sum of money, and is *prima facie* proof thereof. Hazel Horner testified that he told her that Charles B. Alexander had paid him $1,000.00.

There is no showing of any other consideration paid at or before the conveyance of May 14, but there are strong indications that other considerations were involved. When Rosenburg attempted to dissuade Alexander from conveying his property he was told that he had some money in a joint account and that someone had gotten that money, and that his son "Chuck", the same person as Charles B. Alexander, "is taking care of me" and that he would have to bury him. The testimony shows that he occupied with his son the property conveyed by the two deeds until his death some two and one-half years later, all leading to the inference that the plaintiff herein had agreed to provide for his burial and take care of him during his declining years. We are of the opinion that the receipt, aforesaid, and the apparent understanding as to care and burial of the grantor, constituted a sufficient consideration for the

conveyance, and complies with the requirement of the statute in that respect. The value of the property is stipulated. The gross market value of the property in May, 1946 was $7,700.00, and as of October 4, 1949, the date of the trial, it was $7,200.00. We think the market value as of May, 1946, should govern.

We do not understand that to place a person in a position to take the benefit of the recording statute there must be paid as consideration what would be termed the full value of the property. We think that what is required is a consideration which would sustain a conveyance in the ordinary transaction where consideration becomes important. Of course, in the absence of creditors, a person may convey his property on whatever terms he chooses; but in a transaction such as is now before us, we think a reasonably adequate consideration should be paid by a subsequent grantee, before the person who claims under the first deed may be deprived of the benefit of his conveyance. We are of the opinion that the consideration shown here is sufficient to give to the plaintiff the benefit of Code, 40-1-9, had it been paid in full at the time the grantee in the May 14, 1946, deed first received notice of the former deed.

Another question involved in this case, is whether there has been a complete transaction in respect to the deed of May 14, 1946. As early as 1831 in *Doswell* v. *Buchannan's Ex'ors.,* 3 Leigh 365, it was held:

> "To sustain a plea of purchaser without notice, the party must be a complete purchaser before notice; that is, must have obtained a conveyance and paid the whole purchase money."

This rule, slightly modified and liberalized, has been followed in this State in *Webb et al.* v. *Bailey, et al.,* 41 W. Va. 463, 23 S. E. 644; *Welch* v. *King and Douglas,* 82 W. Va. 258, 95 S. E. 844; *Heck* v. *Morgan, et al.,* 88 W. Va. 102, 106 S. E. 413; and *United Fuel Gas Company* v. *Morley Oil & Gas Company,* 101 W. Va. 83, 131 S. E. 716. See 9 Va. & W. Va. Digest 939, and other cases there cited. The

question was not raised by counsel in this case, but we think that consideration thereof cannot be escaped.

As indicated above, we are of the opinion that at the date the plaintiff obtained his deed of May 14, 1946, he was without notice of the former deed for the same property; and paid and agreed to pay a valuable consideration for such conveyance. But we are forced to conclude that we cannot grant to him the relief prayed for in his bill because the transaction was not a completed one. In *United Fuel Gas Company* v. *Morley Oil & Gas Company, supra,* this Court held:

> "To be protected by Section 5, Chapter 47 of the Code [Code, 40-1-9], against a prior unrecorded deed, one must be a complete purchaser, must have had no notice of the prior contract or deed, and have paid all the purchase money for the land purchased by him."

That case is fully supported by other authorities, and we consider it binding upon us.

The question then arises as to what are the rights of the plaintiff, if any, growing out of the peculiar circumstances of this case. The defendant, Sarah R. Andrews, recorded her deed on July 8, 1946, and from that time on, while the plaintiff herein may not have had actual notice of the deed to Sarah R. Andrews, he had constructive notice thereof, and his purchase not being complete, any payments of purchase money he may have made thereafter were at his own risk. We are of the opinion that the record shows that $1,000.00 was paid by the plaintiff to his father at or before the conveyance of May 14, 1946, and we think the record shows there was an agreement between the parties to that deed that the plaintiff would take care of his father and see that he had a suitable burial. However, unless it be from May 8, 1946 to July 8, 1946, when the Sarah R. Andrews deed was recorded, that part of the consideration had not been paid, and, therefore, the transaction had not been completed by the full payment of the purchase money. Assuming for the sake of argument that the plain-

416

tiff undertook to take care of his father during his lifetime, and provided for his burial, it would be no different than if he had executed a note or notes for given amounts to make up a reasonably adequate consideration for the conveyance.

On the subject of consideration, we are of the opinion that the plaintiff in order to receive the benefit of the statute must have paid a reasonably adequate one. We have a stipulation in the record that the value of the one-half interest in the property here involved, as of May, 1946, was $3,850.00. We do not think the $1,000.00 cash payment was an adequate consideration, and it is clear that the other elements of consideration which were necessary to make the deed valid in the circumstances were not paid at the date of the conveyance to the plaintiff.

We must appraise the rights of the plaintiff as they existed immediately prior to the recordation of the deed of May 8, 1946 to Sarah R. Andrews. Code, 40-1-9, provides that:

> "Every such contract, * * * shall be void as to creditors, and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record in the county wherein the property * * * may be."

The plaintiff having obtained a legal advantage through the failure of Sarah R. Andrews to record her deed of May 8, 1946, promptly lost that advantage when said deed was recorded on July 8, 1946. The very terms of the statute force that conclusion. Therefore, after the deed of May 8, 1946, was recorded, it became effective for all purposes, and the grantee in the subsequent deed of May 14, not having completed his purchase, could obtain no rights based upon the payments thereafter made. His rights, whatever they are, must be based upon his situation on the date when he first had actual or constructive notice of the deed of May 8, 1946. He says that he did not have actual notice thereof until one or one and one-half years after he received his deed, but we think this im-

material because he received constructive notice thereof on July 8, 1946, when the first deed was recorded.

In the circumstances of this case, the plaintiff is entitled to have paid to him the sum of $1,000.00 which he had paid to his father at or before the execution of the deed of May 14, 1946, and such sums as he may have expended in the care of his father from that date until the recordation of the Andrews deed on July 8, 1946. We reach this conclusion on the principle that he who asks equity must do equity. Sarah R. Andrews, in her crossbill, asks that the deed of May 14, 1946, to the plaintiff be cancelled as a cloud upon her title to the property here involved, and she should be required, as a condition precedent to any relief under her crossbill, to restore to the plaintiff any sums of money he may have expended without notice of her deed. In our opinion, this principle is fully supported by the case of *Webb* v. *Bailey, supra.* That was a case involving a trust, and it was held:

> "Notice of a prior existing trust, received by a subsequent purchaser before the payment of all of the purchase money, although it be secured and the conveyance executed, is equivalent to notice before the contract of purchase, in so far as the legal title to the trust subject is concerned."

In other words, the subsequent purchaser did not get legal title to the property involved, but was protected to the extent of any purchase money actually paid before notice. In the body of the opinion in that case, we find this language:

> "But, as to the purchase price in so far as paid before notice, the rule prevails that the purchaser, to that extent having acted in good faith, is entitled to be reimbursed from the rightful owner as a condition to granting him a restoration of the property. This is on the principle that he who asks equity must do equity. * * * Purchasers having no notice of any fraud when they take their deed and pay their first installment of the purchase money may be protected as to the amount paid by them on the land. But they can not claim to be

"innocent purchasers until they have made the purchase, received the deed, and paid the whole of the purchase money."

Coming to a conclusion on the whole matter, we are of the opinion that the relief prayed for in plaintiff's bill must be denied, solely on the ground that the purchase of the property involved on May 14, 1946, was not a complete one, and, therefore, plaintiff is not in a position to take advantage of the provision of Code, 40-1-9; but that having in good faith paid the sum of $1,000.00 on the purchase price of the property conveyed to him on that date, he is entitled to have that sum returned to him, with interest; and is entitled to have paid to him any sums expended by him in caring for his father until the 8th day of July, 1946, when the deed to Sarah R. Andrews was recorded. An accounting will have to be had between the plaintiff and Sarah R. Andrews in respect to taxes paid, rents received, and any other matters affecting the protection of the property involved.

The decree of the Circuit Court of Ohio County, entered on the 21st day of October, 1949, is reversed in so far as it denies to the plaintiff any relief whatever, and assesses costs against him; and is affirmed so far as it awards legal title to the property involved to the defendant, Sarah R. Andrews. That part of the decree which grants relief to Sarah R. Andrews will be modified by imposing a condition thereto that she pay to the plaintiff the sum of $1,000.00, with interest from May 14, 1946, and any sums which may have been expended by him in the care of his father between May 14, 1946 and July 8 following. We remand the cause to the circuit court with directions to enter a decree in accordance with this opinion. Costs will be awarded to the plaintiff in the trial court, and to the appellant on this appeal.

*Reversed in part;*
*affirmed in part;*
*cause remanded with directions.*